HOTEL SYRACUSE, INC. and Joseph M. Murphy, Plaintiffs,

v.

Thomas YOUNG, Individually and in His Official Capacity as Mayor of the City of Syracuse, C. Frank Harrigan, Individually and in His Official Capacity as the Corporation Counsel of the City of Syracuse, City of Syracuse Industrial Development Agency, Syracuse Economic Development Corporation, the City of Syracuse, and Does 1 Through 50, Defendants.

No. 91–CV–1121.

United States District Court, N.D. New York.

Nov. 12, 1992.

Deangelis, Kaplowitz, Rice & Murphy, Delmar, N.Y., for plaintiff Hotel Syracuse, Inc.; Brian M. Murphy, of counsel.

Shaw, Licitra, Eserino & Schwartz, P.C., Garden City, N.Y., for plaintiff Hotel Syracuse, Inc.; Stuart I. Gorden, of counsel.

Office of Irving P. Seidman, New York City, for plaintiff Joseph M. Murphy; Irving P. Seidman, P.C., of counsel.

Sive, Paget & Riesel, P.C., New York City, for plaintiff Joseph M. Murphy; Daniel Riesel, Robert M. Klingon, of counsel.

Hiscock & Barclay, Syracuse, N.Y., for defendants; Robert A. Barrer, of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Presently before the court is defendants' motion to dismiss the complaint for (1) lack of subject matter jurisdiction, (2) failure to state a claim upon which relief can be granted, and (3) qualified immunity. Oral argument was heard on December 20, 1991 in Syracuse, New York. For the following reasons, the court grants defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

This action is premised on defendants' alleged constitutional, statutory, and common law violations in supporting development of Syracuse's waterfront area at the expense of downtown Syracuse, and attempting to improperly evict plaintiffs from the Hotels at Syracuse Square. Plaintiff Joseph M. Murphy ("Murphy") is a resident of Florida. All other parties are residents of New York. Jurisdiction is alleged under 28 U.S.C. §§ 1331 (federal question), 1332(a)(1) (diversity of citizenship), and 1367(a) (supplemental).

Plaintiffs' complaint provides an in-depth summary of the long and financially draining relationship Murphy has had with the Hotel Syracuse. Murphy first acquired an interest in the Hotel in or about 1971, and subsequently acquired 100% ownership of the Hotel sometime in the 1970s. His ownership of the Hotel is held through a corporation, Hotel Syracuse, Inc. ("HSI"), of which Murphy is the sole shareholder. Plaintiffs allege that the Murphy family has invested more than $12 million in the Hotel, including more than $7 million since 1984. Murphy's son, Joseph M. Murphy, Jr., has spent the last nine years as the General Manager of the Hotel, and is currently holding that position.

Ownership of the Hotel was syndicated as a means to raise additional funds for expansion and refurbishment. HSI conveyed fee ownership of the Hotel's premises to a limited partnership, Ho–Syr, whose

shares could be sold to investors. Ho–Syr held title to the premises and leased it to HSI, which continues to operate the Hotel.

In 1981, plaintiffs' commitment to the Hotel's renovation and expansion was secured when Murphy, HSI, the City of Syracuse ("City"), and the Syracuse Industrial Development Agency ("SIDA")[1] agreed to create a financing package that would enable the Hotel to take advantage of statutorily-created tax benefits. Such benefits were to be reinvested in the Hotel, a new Hilton Hotel Tower, and the surrounding downtown area, to retard the economic decline of downtown Syracuse. Murphy allegedly agreed to make the commitment only after City officials assured him that they were committed to reestablishing the downtown area as an active commercial and retail center.

The 1981 financing package included an agreement to convey fee title to the Hotel's premises from plaintiffs to SIDA in order to make SIDA's tax exempt status available to the Hotel. On May 2, 1981, SIDA leased the Hotel premises back to Ho–Syr for rent of one dollar per year. The term of the lease was for thirty years with an option to renew, exercisable by Ho–Syr, for an additional sixty years. The lease stipulated that Ho–Syr must repurchase the Hotel premises from SIDA when loans to finance the Hotel made by Manufacturers Hanover Trust Company, N.A. ("Manufacturers") and the Syracuse Economic Development Corporation ("SEDCO") are paid in full. Ho–Syr subsequently subleased the Hotel premises to HSI. In a later transaction, Ho–Syr conveyed the prime lease to HSI, and HSI continues to occupy and operate the Hotel today.

Financing for the Hotel refurbishment and expansion was arranged by SIDA and HSI from a consortium of lenders led by Manufacturers, SEDCO, and Security Savings & Loan Association ("Security"). On May 2, 1981, Manufacturers, on behalf of the consortium, contracted with SIDA and HSI to lend up to $7.5 million. To secure the loan, SIDA, Ho–Syr, and HSI gave Manufacturers a promissory note, a first mortgage on the new Hotels at Syracuse Square ("Hotels"),[2] and a conditional assignment of rents and leases. In another financial arrangement, SEDCO entered into a building loan with SIDA, HSI, and Ho–Syr to provide an additional $4 million for the Hotels' redevelopment. That loan was secured by a second mortgage on the Hotels and a promissory note. The SEDCO loan and corresponding security were later conveyed to the Manufacturers-led consortium, thus establishing Manufacturers as the prime lender. The second mortgage securing the SEDCO loan was merged with the first mortgage securing the existing Manufacturers loan.

On September 22, 1982, HSI obtained an additional $1 million loan from Manufacturers. This loan was secured by a note and mortgage that was merged with Manufacturers' first mortgage. Subsequently, SEDCO lent an additional $3.5 million to Ho–Syr and SIDA, which was secured by a new second mortgage and note. In yet another transaction, Security agreed to lend SIDA and HSI an additional $5 million on December 15, 1983. The loan was secured by a note, an assignment of leases and rents, and a mortgage junior to the first mortgage held by Manufacturers. SEDCO subordinated its second mortgage to the mortgage held by Security, thus making SEDCO's mortgage a third mortgage. The entire $5 million loan from Security was personally guaranteed by Murphy. Subsequently, Security's loan and its security were conveyed to an individual named Howard Curd, who later conveyed the loan and security to the Apple Bank for Savings ("Apple"). Apple currently retains the loan and security. This series of transactions representing the financial package for refurbishing the Hotels was rounded out by an agreement between SIDA, HSI,

---

**1.** SIDA was created to promote economic growth and development in the Syracuse area. Pursuant to New York General Municipal Law § 926, the Mayor of Syracuse appoints the chairman and all other members of SIDA.

**2.** The Hotels at Syracuse Square is comprised of The Hotel Syracuse and the Hilton Tower.

and the City which provided for periodic payments in lieu of taxes ("PILOTs"), that compensated the City for real estate tax revenues that it lost by virtue of SIDA's holding paper title to the Hotels. The entire loan package exceeded $21 million.

By the spring of 1987, the promised redevelopment of downtown Syracuse had not yet occurred, allegedly forcing plaintiffs and their lenders to enter into a comprehensive debt refinancing. The refinancing provided new terms for the payment of arrears on the HSI's loans, and Murphy conveyed to both the Manufacturers-led consortium and the City an interest in the proceeds of any sale of the Hotels. Additionally, Murphy restated his undertaking to guarantee a portion of the Hotel's debt personally. The scheduling and amount of restructured payments were based on the Hotels' anticipated income to be generated by the City's promised downtown redevelopment efforts.

Shortly after entering into the restructuring arrangements, the City, SEDCO, SIDA, Young, and Harrigan ("City Group") announced that they would provide public financing, tax benefits, and improvements for the development of Carousel Center Shopping Mall ("Carousel Center"). Plaintiffs allege that defendants were aware that development of the Carousel Center threatened revitalization attempts in the downtown commercial district. Despite this knowledge, defendants did not mention the plans to HSI or Murphy while they were negotiating the 1987 debt restructuring and equity interest transfer. Moreover, plaintiffs contend that in financing Carousel Center, SIDA, SEDCO, and the City financed the creation of banquet facilities that are made available to the public free of charge, thereby directly taking business from the Hotels. Plaintiffs allege that after having benefitted from HSI's and Murphy's efforts to refurbish and expand the Hotels, the City Group through its actions caused the adverse economic conditions that led to HSI's declaration of bankruptcy in October 1990. Plaintiffs further allege that the City Group destroyed the ability of HSI to meet its debt obligations,

which forced the Murphy guarantees to be called.

In 1990, plaintiffs entered into a second debt restructuring with the City. The intention was to allow the Hotels to participate in the development of a convention center and hotel complex in the downtown area. The restructuring was conditioned in part on Onondaga County naming HSI the preferred developer of the hotel portion of the proposed downtown convention center complex. An agreement among Onondaga County, HSI, and the New York Urban Development Corporation ("UDC") was executed on May 7, 1990, providing in part that HSI would undertake to construct a new hotel as part of the convention center project. In addition, HSI agreed to further refurbish and expand the Hotels. HSI was to provide an irrevocable letter of credit for $1 million that Onondaga County could draw on if HSI breached the agreement to build the new hotel.

It was later determined by Onondaga County and UDC that the construction of a new hotel was unnecessary to the proposed convention center complex. Allegedly, as a result, HSI declined to provide the letter of credit. Thereafter, Onondaga County cancelled the May 7, 1990 agreement, thus terminating the preferred developer status of HSI. Plaintiffs allege that this decision, in addition to defendant Young's need for a campaign issue for the Mayoral election, led SIDA, the City, Young, and Harrigan to terminate the part of their agreement with HSI to restructure the Hotels' PILOT payments.

On July 27, 1990, plaintiffs were served with a notice of default, stating that HSI would be evicted from the Hotels within 30 days unless its arrears were paid. Plaintiffs allege that when defendant Harrigan served the default notice, he told Murphy that the notice was motivated by politics, not economics. Plaintiffs also allege that the lease with SIDA required SIDA to obtain the express authorization of Manufacturers to have plaintiffs evicted, and that authorization was never obtained.

Shortly after receiving the default and eviction notice, plaintiffs sought new fi-

nancing to eliminate HSI's arrears. Although several banks allegedly expressed interest in supplying the financing, plaintiffs contend that this interest evaporated when Young, Harrigan, and other City officials publicly impugned Murphy's honesty and the financial viability of HSI and the Hotels. With this option foreclosed, plaintiffs attempted to fight the eviction by seeking a preliminary "Yellowstone" injunction in New York State Supreme Court, Onondaga County. In that action, plaintiffs sought to toll the time period within which to cure the alleged defaults in HSI's May 2, 1981 lease with SIDA, and to enjoin SIDA from enforcing or otherwise proceeding to terminate the lease, or attempt to recover possession of the leased premises. Justice Norman Mordue denied plaintiffs' motion for a preliminary injunction on September 28, 1990. One day prior to the expiration of the lease, HSI filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. 11 U.S.C. § 101 et seq.

Plaintiffs filed the present complaint on October 4, 1991, stating eight causes of action. The first alleges that Young and Harrigan, by reason of the aforesaid events and circumstances, deprived plaintiffs of their property without due process of law in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1983 and 1988. Second, plaintiffs allege that the City, SIDA, and SEDCO breached the implied covenant of good faith and fair dealing in the lease, the PILOTs, and the SEDCO note. Third, plaintiffs allege that SIDA, by its actions, breached the express covenant of quiet enjoyment in the lease. Plaintiff's fourth claim is for fraudulent omission based on the City's and SIDA's failure to reveal material facts about the proposed Carousel Center project. The fifth cause of action alleges that defendants' conduct in facilitating and promoting the Carousel Center, hindering plaintiffs' commercial efforts, and forcing the Hotels into bankruptcy, constitutes a "taking" within the meaning of the Fifth and Fourteenth Amendments of the United States Constitution. Plaintiffs' sixth cause of action alleges that

SIDA, the holder of title to the Hotels, breached its fiduciary duty to HSI, the beneficial owner of the Hotels, by the aforementioned actions and circumstances. The seventh cause of action alleges that defendants' statements questioning the viability of the Hotels, which allegedly prevented plaintiffs from obtaining new financing, represented a tortious interference with business advantage. Plaintiffs' final cause of action seeks punitive damages for defendants' reckless and malicious conduct.

Defendants brought the present motion to dismiss on November 12, 1991, seeking dismissal on the following three grounds:

## A. *Lack of Subject Matter Jurisdiction*

### 1. Failure to allege violation of federal constitutional or statutory rights

Defendants initially contend that plaintiffs' § 1983 claim is "wholly insubstantial" because it fails to allege any violation of federal constitutional or statutory rights, and as such it should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1). More specifically, defendants contend that plaintiffs fail to demonstrate that they had a property interest in the contracts and related agreements which formed the basis of plaintiffs' involvement with the Hotels. According to defendants, such contractual rights do not raise to the level of property rights protected by the Fourteenth Amendment. In the alternative, defendants seek dismissal of plaintiffs' § 1983 claim on the ground that it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

In response, plaintiffs argue that the financing contracts and related agreements and undertakings between plaintiffs and defendants created constitutionally protected property rights in the Hotels and their operation. Further, plaintiffs contend that they have sufficiently alleged deprivation of their property rights by defendants' illegal and malicious scheme to remove plaintiffs from owning and operating the Hotels.

### 2. Lack of standing

Defendants assert that plaintiffs lack standing under Article III of the United States Constitution to challenge the alleged wrongful implementation of municipal planning and policy-making because these are matters of purely local governmental concern. According to defendants, it is inappropriate for the court to act as a local planning board.

Plaintiffs, on the other hand, argue that they have standing based on their asserted claim that they were deprived of property and thus suffered injuries personally because of defendants' allegedly illegal activities. Plaintiff Murphy also argues that he has standing based on the allegations contained in the complaint that he was a target of defendants' illegal scheme and that he suffered a loss of property thereby.

### 3. Lack of complete diversity

Additionally, defendants move to dismiss plaintiffs' state law claims on the ground that the parties are not completely diverse as required by 28 U.S.C. § 1332. According to the defendants, one of the plaintiffs, namely HSI, and all of the defendants are citizens of New York. While plaintiffs admit that HSI lacks complete diversity, they assert that diversity jurisdiction allegations were included in the complaint solely to support jurisdiction over Murphy's individual state law claims in the event his federal claim was dismissed.

### 4. Failure to file a notice of claim

Defendants next move to dismiss plaintiffs' tort claims on the ground that plaintiffs failed to file a notice of claim pursuant to New York General Municipal Law §§ 50–e, 50–i, and 880(2). When read together, these provisions require that notice be given to a city, agency, or its officers within 90 days after a claim for damage to real or personal property caused by their negligent or wrongful acts arises. Defendants argue that plaintiffs in the case at bar did not file a notice of claim within the 90 day period.

In response, plaintiffs assert that they were not required to serve a notice of claim because, although their claims sound in tort, the claims are based on violations of duties that arise from contracts, and New York courts construe such claims as contract claims not subject to General Municipal Law notice provisions. In any event, plaintiffs argue that defendants had actual knowledge of the facts and circumstances surrounding plaintiffs' claims, and therefore the notice requirement was satisfied.

### 5. Dismissal of federal claim warrants dismissal of pendent state claims

Defendants also contend that in the event plaintiffs' federal claim is dismissed before trial, the court should dismiss plaintiffs' pendent state law claims as well. Plaintiffs respond by arguing that since there is jurisdiction over their § 1983 claim, the court has supplemental jurisdiction over the state law claims. But should the court dismiss their § 1983 claim, plaintiffs urge the court to exercise its discretion under 28 U.S.C. § 1367 to retain jurisdiction over the supplemental claims.

### 6. Statute of Limitations

Defendants next move to dismiss the complaint on the ground that various claims are barred by the applicable statute of limitations. Plaintiffs did not respond to this portion of defendants' motion.

#### a. *Section 1983 claim barred by CPLR 214*

Defendants argue that plaintiffs' § 1983 claim is barred by New York's three-year statute of limitations for personal injury claims contained in N.Y.Civ.Prac.L. & R. ("CPLR") 214. According to defendants, since the complaint was served on them on October 9, 1991, any alleged wrongful conduct that occurred prior to October 9, 1988 cannot serve as a basis for plaintiffs' claim under § 1983. The complaint, however, alleges some wrongful conduct by some or all of the defendants in 1986 and 1987. Based on this fact, defendants move to dismiss plaintiffs' § 1983 claim pursuant to the three year statute of limitations.

### b. *Intentional conduct claims barred by CPLR 215*

Defendants also argue that to the extent that plaintiffs seek damages for defamation, i.e., trade slander, the claim is time-barred by CPLR 215(8), which provides a one-year statute of limitations for such claims. According to defendants, the only statements alleged to be actionable for trade slander occurred in July 1990, more than a year prior to commencement of this action on October 4, 1991.

### c. *State tort claims barred by §§ 50–i and 880 of General Municipal Law*

Last, defendants argue that plaintiffs' state tort claims are barred by §§ 50–i and 880 of the N.Y. General Municipal Law. Pursuant to § 50–i(1)(c), a party has one year and ninety days from the date of an alleged negligent or wrongful act by a city to bring any claims based on that act. Similarly, pursuant to § 880(2) a party has one year after the cause of action accrued in which to bring a tort claim against a municipal agency such as SIDA. Defendants argue that the complaint alleges no claims grounded in tort which occurred within the statutory periods set by these sections of the General Municipal Law, and therefore the corresponding state law tort claims should be dismissed.

### B. *Failure to State a Claim Upon Which Relief Can Be Granted*

Defendants next move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

#### 1. Res judicata

Defendants first contend that plaintiffs are barred from relitigating state law claims which were fully and finally adjudicated in the New York courts. As discussed earlier, plaintiffs' request for a preliminary injunction to toll the time within which HSI was required to cure its defaults under the lease agreement with SIDA was denied by New York State Supreme Court, Onondaga County. In so doing, the court held (1) that HSI lost its preferred develop-

er status by failing to comply with the terms of the agreement with Onondaga County (i.e., by failing to provide the required letter of credit), and (2) that SIDA had properly initiated an action to recover possession of the Hotels upon HSI's default. Defendants argue that pursuant to 28 U.S.C. 1738, the state court ruling bars plaintiffs from relitigating their breach of contract (Second and Third), inverse condemnation (Fifth), breach of fiduciary duty (Sixth), and tortious interference with business advantage (Seventh) claims. In the alternative, defendants argue that the issues litigated in the state court proceeding must be deemed settled for purposes of this litigation.

In opposition, plaintiffs argue that the state court rulings are not determinative of the primary issues material to the present complaint because the state proceeding was exceedingly narrow; all it decided was that HSI defaulted under the lease and it could not cure the default in short order. According to plaintiffs, the state court never, as defendants contend, "held that SIDA had properly initiated an action to recover possession of the premises...." Plaintiffs' Memorandum of Law, Doc. 7, at 60. Consequently, plaintiffs argue that res judicata does not apply because the issues have not been litigated.

#### 2. Breach of covenant of quiet enjoyment

Defendants assert that plaintiffs failed to state a claim for breach of the covenant of quiet enjoyment. In order to state a claim for such a breach, defendants assert that HSI must allege that its possession and use of the Hotels was disturbed by either an actual or constructive eviction. Because HSI never surrendered or abandoned possession of the Hotels, defendants argue that HSI fails to state a claim for the requested relief. Furthermore, defendants contend that the payment of all required rent is a condition precedent to the maintenance of such a claim.

Plaintiffs counter by arguing that actual or constructive eviction is not a condition precedent to plaintiffs' claim of breach of

the *express* covenant of quiet use and enjoyment contained in the lease agreement. Further, plaintiffs argue that payment of rent is not a prerequisite to this claim. As such, defendants motion to dismiss plaintiffs' claim for breach of the covenant of quiet enjoyment should be denied.

### 3. Punitive damages

Defendants contend that New York law does not recognize a separate cause of action for punitive damages, and therefore plaintiffs' eighth cause of action should be dismissed. Plaintiffs did not respond to this portion of defendants' motion.

### 4. Fraudulent omission

Defendants next argue that plaintiffs' failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b) warrants dismissal of this claim. More specifically, defendants assert that under New York law, silence does not constitute fraud absent a confidential or fiduciary relationship between the parties to a contract. Because no confidential or fiduciary relationship has been alleged in this case, and none is implied under New York law, defendants contend that plaintiff's fourth cause of action alleging fraud in defendants' silence concerning the development of Carousel Center should be dismissed. Further, even assuming that the City and SIDA had a duty to disclose the Carousel Center project to plaintiffs, defendants contend that plaintiffs fail to state a claim for fraudulent omission, since they suffered no injury as a result, i.e., they did not rely upon the silence of the City and SIDA to their detriment.

In opposition, plaintiffs assert that they have properly alleged that defendants owed them a fiduciary duty related to the Hotels. Moreover, according to plaintiffs, New York law provides an additional ground for finding a duty to disclose arising from the superior and singular knowledge of one of the parties to a transaction. Plaintiffs argue that defendants had such knowledge in the case at bar.

### 5. Taking without due process and just compensation

Defendants also move to dismiss the complaint on the basis that plaintiffs failed to allege any unlawful "taking" without due process and just compensation. It is undisputed that HSI has possession and use of the Hotels, is operating the Hotels, and is generating revenue. Therefore, defendants argue that HSI has not lost any property right that would constitute a taking. Furthermore, defendants contend that plaintiffs have failed to cite any regulation, legislation, or government action which deprived them of their rights without due process of law. In fact, the only action taken by SIDA, namely to serve an eviction notice on HSI, was held to be proper by the New York State Supreme Court.

Plaintiffs contend that they are not alleging an improper taking by eviction, but rather that they have been deprived of an essential use of their property, rendering it valueless. Plaintiffs contend that such a deprivation was sufficiently intrusive to have rendered the Hotels valueless, and therefore they have stated a valid claim for taking without due process of law.

### 6. Breach of fiduciary duty

Defendants contend that New York law does not automatically impose a fiduciary duty upon the owner/lessor of real property. Rather, some confidential relationship between the parties is necessary to establish a fiduciary duty. No such relationship exists in the case at bar according to defendants, and without the existence of a fiduciary relationship, defendants assert that plaintiffs' claim for breach of fiduciary duty must be dismissed.

According to plaintiffs, the above argument ignores the allegation in the complaint that the parties' sale and leaseback of the Hotels was not at arms length, that HSI is the beneficial owner of the Hotels, and that SIDA holds legal title merely to effectuate the tax-free financing strategy. Under New York law, this arrangement creates a trust, the existence of which creates a fiduciary relationship and corresponding fiduciary duty.

### 7. Tortious interference with prospective advantage

Defendants further contend that plaintiffs have failed to state a cause of action for tortious interference with prospective advantage. The complaint alleges that defendants illegally interfered with plaintiffs' attempt to obtain financing by publicly impugning HSI and Murphy. According to defendants, in order to state a claim for tortious interference with prospective advantage, plaintiffs must show that but for the alleged interference, a contract would have been entered into. It is not enough to allege that it was reasonably certain that it would been entered into. Because the complaint does not allege facts indicating that a contract would have been entered into, defendants request that the seventh claim be dismissed. Plaintiffs did not respond to this portion of defendants' motion.

### 8. Claims on behalf of Murphy individually

Defendants' final ground for 12(b)(6) dismissal is directed at the claims of behalf of Murphy individually. Defendants argue that these claims should be dismissed because the complaint fails to allege injury to him individually. HSI is the lessee and the operator of the Hotels; Murphy is not. While Murphy may be the beneficiary of a recovery in this action because he is the sole shareholder of HSI, defendants contend that "[f]or a wrong against a corporation, a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability to maintain the solvency of the corporation." *Abrams v. Donati,* 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 783, 489 N.E.2d 751, 752 (1985). Defendants argue that Murphy's claims of lost investment or potential liability as a guarantor of the corporate debt does not give him an individual and separate right of recovery. Plaintiffs did not directly respond to this portion of defendants' motion.

### C. *Qualified Immunity Requires that the Individual Defendants be Dismissed from the Action*

Defendants' last argument in support of their motion to dismiss is that there is no basis for liability against defendants Young and Harrigan in their individual capacities. Defendants contend that public officials have a qualified immunity against civil liability and that such immunity may serve as the basis for a motion to dismiss. Furthermore, defendants assert that plaintiffs can prove no violation of any clearly established constitutional right because plaintiffs can prove no violation of any constitutional right. Therefore, defendants argue that because the individual defendants' qualified immunity cannot be defeated, any causes of action directed against them should be dismissed.

In opposition, plaintiffs argue that "defendants have not established that their action did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Allegations that defendants had a personal vendetta to deprive citizens of their property is sufficient to defeat the motion to dismiss on this basis.

## II. DISCUSSION

Defendants initially move to dismiss plaintiffs' § 1983 claim for lack of subject matter jurisdiction. The complaint alleges jurisdiction over the § 1983 claim pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, treaties of the United States." In arguing that the court lacks jurisdiction under § 1331, defendants invoke the substantiality doctrine, which requires that a district court dismiss a complaint seeking recovery under the Constitution or laws of the United States if the alleged federal claim either "clearly appears to be immaterial and solely made for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Ricketts v. Midwest National Bank,* 874 F.2d 1177, 1180 (7th Cir. 1989) (quoting *Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 776, 90 L.Ed. 939

(1946)). When the court determines that a complaint is undermined by either of these deficiencies, the complaint must be dismissed for want of federal subject matter jurisdiction. *Ricketts*, 874 F.2d at 1180. The Supreme Court has held that "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously frivolous,' 'plainly insubstantial,' or 'no longer open to discussion.'" *Hagans v. Lavine*, 415 U.S. 528, 536–537, 94 S.Ct. 1372, 1378–1379, 39 L.Ed.2d 577 (1974) (internal citations omitted). Thus, the determination of whether the merits of a complaint are sufficiently substantial is a threshold question which must be addressed by the court before it can exercise jurisdiction and proceed to the legal determination under Fed.R.Civ.P. 12(b)(6) of whether the complaint states a claim. *Bell*, 327 U.S. at 682–83, 66 S.Ct. at 776; 13B Wright, Miller & Cooper, *Federal Practice and Procedure*, Jurisdiction 2d § 3564.

■ A careful review of plaintiffs' complaint leads the court to conclude that the § 1983 claim is not "immaterial to the true thrust of the complaint" nor "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 681–82, 66 S.Ct. at 775–76. No previous court decision has directly addressed the issue presented by plaintiffs' § 1983 claim, namely whether due process protection extends to the contractual right to the benefits of owning and operating a hotel. While defendants may be correct in arguing that previous court decisions call into question the merits of the claim, this fact alone is insufficient to remove subject matter jurisdiction from the court. In short, the claim is not "so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Bell*, 327 U.S. at 683, 66 S.Ct. at 776. Nor can the court say that plaintiffs' claim is "so insubstantial, implausible, foreclosed by prior [court] decisions ... or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the district court." *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct.

772, 776–77, 39 L.Ed.2d 73 (1974). Consequently, defendants' motion to dismiss plaintiffs' § 1983 claim on the ground of insubstantiality is denied.

■ In the alternative, defendants move to dismiss plaintiffs' § 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dismissal is appropriate under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972)). In passing on a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Moreover, the court is required to accept the material facts alleged in the complaint as true. *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991).

■ Section 1983 imposes civil liability on any person who, under color of state law, subjects another to the deprivation of any rights "secured by the Constitution and laws." Where, as here, the right alleged to have been denied is protected by the Fourteenth Amendment, the plaintiff must establish that the deprivation was without due process of law. *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987). A two-step analysis is employed in the determination of any due process claim. "[F]irst, the Court ascertains whether that which the plaintiff claims he was deprived of amounts to a property interest entitled to due process protection, and second, the Court determines the nature of the process due." *Beacon Syracuse Associates v. City of Syracuse*, 560 F.Supp. 188, 194 (N.D.N.Y.1983) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

■ Accordingly, the court must first determine whether plaintiffs were deprived of a constitutionally protected property interest. "[P]roperty interests may take many

forms." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Welfare payments and tenured teaching positions are now considered property as a result of the Supreme Court's broadened interpretation of the term. *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 965 (2d Cir.1988) (internal citations omitted). However, an abstract need or desire for benefits is not enough to establish a property interest. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. A person "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

Persons derive claims of entitlement not through the Constitution itself, but rather " 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Beacon*, 560 F.Supp. at 194 (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). While entitlement to protected benefits may be conferred by statute or by contract, it is relatively clear that a contract dispute, in and of itself, is not sufficient to give rise to a cause of action under § 1983. *S & D Maintenance*, 844 F.2d at 966; *Costello*, 811 F.2d at 784. Courts have been wary of the consequences that might arise if § 1983 were expanded to encompass substantially all public contract rights. In fact, the Second Circuit has stated that "the doctrinal implications of constitutionalizing all public contract rights would raise substantial concerns, and we seriously doubt that *Roth* and its progeny portend such a result...." *S & D Maintenance*, 844 F.2d at 966–67.

Here, plaintiffs claim property rights in the Hotels both as real property and as an ongoing business enterprise. The source or nature of the claimed property interests are the contracts and agreements between plaintiffs and defendants,[3] as well as the express and implied understandings that formed the basis for entering into the agreements.[4] Plaintiffs argue that the claimed property interests in the case at bar are analogous to the property rights in contractual employment addressed by the Supreme Court in *Roth* and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which turned on the question of a mutually understood entitlement to continued enjoyment of the contractual right. This was determined by the existence, or nonexistence, of a tenure clause or other understanding of continued employment for a period of time barring some transgression. According to plaintiffs, if a contract or understanding creates an interest that the private party is entitled to enjoy for a period of time or as long as specified conditions are satisfied, the interest can be protected constitutionally. In the case at bar, plaintiffs assert that the contracts and understandings between plaintiffs and defendants provide them with an interest in the beneficial ownership and operation of the Hotels until certain conditions occur, and therefore their interest in the contracts is protected by the Constitution.

Plaintiffs also assert that the *Roth* and *Perry* holdings have not been limited to public employment contracts. According to plaintiffs, the Second Circuit has applied the *Roth/Perry* reasoning to a commercial equipment contract in *S & D Maintenance*. In that case, the plaintiff alleged, *inter alia*, that termination by New York City of a parking meter maintenance contract violated its due process rights. The contract contained one provision that permitted the City to terminate the contract at any time, without cause; a second provision allowed the City to terminate by default, but only after notice and a hearing. Based on these

---

3. The contracts between plaintiffs and defendants include: (1) the Lease between HSI and SIDA, (2) the Assignments of Rents and Leases among HSI, SIDA and the mortgagees, (3) and the PILOT agreement among HSI, SIDA and the City. Defendants' Memorandum of Law, Doc. 7, at 24.

4. The understandings between plaintiffs and defendants include: (1) an implied covenant of good faith and fair dealing, and (2) express representations made by defendants to revitalize downtown Syracuse. Defendants' Memorandum of Law, Doc. 7, at 24.

contract provisions, the court determined that S & D held no property interest in having its services retained throughout the term of the contract, but did hold a property interest in not being terminated on the ground that it was in default. *S & D Maintenance*, 844 F.2d at 968. Because the City acted to terminate the contract under the provision allowing for termination without cause and not the default provision, the court concluded that no deprivation of property had occurred. Conversely, in this case the contracts at issue specify the grounds and procedures for termination, and therefore are terminable only for cause. Based on this fact, plaintiffs argue that their interest in the contracts is entitled to due process protection.

Defendants, on the other hand, contend that due process protection has only been afforded to contractual rights conferring *governmental benefits*, such as welfare or tenured employment, not the type of private benefits involved in the case at bar. Defendants also contend that plaintiffs mistakenly rely on *S & D Maintenance*. For the reasons set forth below, the court agrees.

In *S & D Maintenance*, the Second Circuit never reached the issue presently before this court, namely whether the contractual rights asserted by plaintiffs are protected property interests under the Due Process Clause. Rather, the court addressed the threshold issue of whether the plaintiff had a concrete *entitlement* to the rights asserted as required by *Roth*. 844 F.2d at 967. The court concluded that plaintiff did not have such an entitlement because plaintiff was terminated under a contract provision permitting defendant to unilaterally terminate the contract at any time. In this case, there is little question that the contractual rights asserted by plaintiffs provide them with concrete entitlements within the traditional interpretation of *Roth*. *See Walentas v. Lipper*, 862 F.2d 414, 418–419 (2d Cir.1988); *S & D Maintenance*, 844 F.2d at 967. The contracts upon which plaintiffs base their property rights to continued possession and operation the Hotels free from defendants' interference specify the grounds and proce-

dures for termination of the agreements. Unlike the contract involved in *S & D Maintenance*, the contracts here are not susceptible to at-will termination by defendants.

The more difficult question facing the court today is whether the contractual rights asserted by plaintiffs are the kind protectable under § 1983. The Supreme Court has accorded procedural due process protection to interests that "extend well beyond actual ownership of real estate, chattels, or money." *Roth*, 408 U.S. at 572, 92 S.Ct. at 2706. However, the doctrine has not been extended to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor. *S & D Maintenance*, 844 F.2d at 967. The Second Circuit has stated, in dicta, that the Due Process Clause is invoked in the contractual context to protect something more than ordinary contractual rights. *Id.* at 966. Procedural protection is extended to prevent the government's revocation of a "status," an estate within the public sphere characterized by a quality of either extreme dependence or permanence, without due process protection. *Id.* No such status is involved in the case at bar. Unlike a tenured employment situation, the contracts upon which plaintiffs in this case rely do not provide an interest as fundamental as an individual's employment. *See San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino*, 825 F.2d 1404, 1409–10 (9th Cir.1987) ("the farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts"); *see also Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir.1983). The importance to plaintiffs of their interest in owning and operating the hotels is principally financial, whereas the importance to an individual of retaining his/her tenured employment can be much more substantial than that. Losing one's job may impair one's self-worth; one may find it difficult, if not impossible, without

protracted and costly search to find an equivalent job, and may in the end have to settle for an inferior job at lower pay. Further, the individual may be forced to seek public assistance to pay for such necessities as food and shelter. In short, while the interest of plaintiffs in the benefits of owning and operating the Hotels is not insubstantial, it is considerably less weighty than an individual's interest in the termination of social security benefits or tenured employment, and therefore does not come under due process protection. At best, plaintiffs have an action for common law breach of contract. Plaintiffs' additional argument that each time a contract or understanding creates an interest that a private party is entitled to enjoy for a period of time or as long as specified conditions are satisfied the interest is protected constitutionally, albeit creative, is not persuasive. Such a conclusion would lead to the wholesale federalization of state public contract law, an outcome which does not comport with the fundamental purposes of the Due Process Clause. *See Unger v. National Residents Matching Program*, 928 F.2d 1392, 1398 (3rd Cir.1991). In sum, the contractual interest of plaintiffs in the beneficial ownership and operation of the Hotels is simply not a protected property interest within the meaning of the Due Process Clause. *See, e.g., San Bernardino Physicians' Services Medical Group*, 825 F.2d at 1404 (denying due process protection for corporation's contractual right to supply medical services for four-year term).

■ The next source of the claimed property interest is the express and implied understandings that formed the basis for entering into the contracts/agreements. The first alleged understanding is that of an implied covenant of good faith and fair dealing. New York recognizes, in appropriate circumstances, an implied obligation of good faith when entering into contracts. *See Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983). However, "that obligation is not a property interest protected by the due process clause." *Walentas v. Lipper*, 636 F.Supp. 331, 335 (S.D.N.Y.1986). Rather, it is merely another contractual right and is not entitled to constitutional protection. *Id.* Therefore, it cannot serve as the basis for sustaining plaintiffs' § 1983 cause of action in the case at bar.

■ Finally, plaintiffs contend that they have a protected property interest in defendants' assurances that downtown Syracuse would be revitalized. In essence, plaintiffs argue that they have an investment-backed expectation in the development of downtown Syracuse. Plaintiffs contend that, unlike the circumstances in *Beacon* where the plaintiff was found not to have a property interest in an investment-backed expectation, they have a concrete property interest in the assurances of downtown development based on the contracts and agreements with defendants. However, as discussed above, the contracts and agreements do not provide plaintiffs with protectable property interests. But even assuming that plaintiffs did have property interests in the contracts and agreements, there is no evidence that plaintiffs were deprived of their rights by defendants' actions. Rather, their own default on the lease led to the eviction notice. It is clear that the process for default set forth by the lease was complied with. The lease prescribed the events of default, and a notice was served on plaintiffs by defendants in accordance therewith. It is undisputed that HSI was in default when the notice was served. Moreover, as the New York Supreme Court determined, plaintiffs were properly served with the eviction notice. Order and Judgment, Exh. A attached to Doc. 5, at 4.

In sum, the court concludes that plaintiffs can prove no set of facts in support of their § 1983 claim that would entitle them to relief. *See Hughes*, 449 U.S. at 10, 101 S.Ct. at 176. Therefore, defendants' motion to dismiss plaintiffs' § 1983 claim pursuant to Fed.R.Civ.P. 12(b)(6) is granted. The court notes, however, that this dismissal is without prejudice. As the Second Circuit acknowledged in *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988), the district court has discretion upon a Rule

12(b)(6) dismissal to permit a plaintiff to replead. If plaintiffs intend to pursue their § 1983 claim, they must file an amended complaint within 60 days of the date of this decision.

■ The court next turns to defendants' motion to dismiss the remaining state law claims on the ground that diversity jurisdiction is lacking. *See* 28 U.S.C. § 1332. Specifically, defendants assert that plaintiff HSI and all of the defendants are citizens of New York, and therefore complete diversity is lacking. Plaintiffs admit that HSI lacks diversity, but nevertheless argue that the court should retain jurisdiction over individual plaintiff Murphy's state law claims. The court cannot retain jurisdiction, however, since 28 U.S.C. § 1332 requires that the parties to the action be completely diverse. This mandates that *all* plaintiffs and *all* defendants be diverse. *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir.1992) (emphasis supplied). Since the requirement of complete diversity is not met in the case at bar, the court concludes that it does not have diversity jurisdiction over the remaining state claims.

■ The court may, however, retain jurisdiction over these pendant claims by way of its supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over all state claims which are related to claims over which the court has original jurisdiction. However, the "district courts may decline to exercise supplemental jurisdiction over a [state] claim if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court is conferred broad discretion in deciding whether to continue hearing the state claims. *See Maybee v. Town of Newfield*, 789 F.Supp. 86, 92 (N.D.N.Y.1992) (McCurn, C.J.). However, it is generally accepted that state claims must be dismissed if the federal claim is dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir.1990).

In the case at bar, through this Memorandum–Decision and order, plaintiffs' § 1983 claim has been dismissed well before trial and well before extensive discovery has been conducted. Accordingly, the court declines to exercise its discretion to retain supplemental jurisdiction over plaintiffs' remaining state claims and said claims are hereby dismissed. Based on this decision, the court does not reach defendants' remaining arguments for dismissal.

## III.  CONCLUSION

Because the contractual and other interests asserted by plaintiffs do not rise to a sufficient level to merit Fourteenth Amendment protection, defendants' Rule 12(b)(6) motion to dismiss plaintiffs' 42 U.S.C. § 1983 claim for failure to state a claim is granted. Plaintiffs' state law claims are also dismissed on the ground that the court declines to retain supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a). The Clerk of the Court is directed to dismiss plaintiffs' complaint in its entirety, without prejudice. In the event that plaintiffs fail to file an amended complaint within 60 days of the date of this decision, the Clerk of the Court is directed to enter judgment in favor of defendants.

It is So Ordered.