**Richard BLACKWELL, Plaintiff,**

v.

**The MAYOR AND COMMISSIONERS OF DELMAR, et al., Defendants.**

**Civ. A. No. N–93–1269.**

United States District Court, D. Maryland.

Nov. 17, 1993.

Daniel Karp, and Allen, Johnson, Alexander & Karp, P.A., Baltimore, MD, for defendants.

### MEMORANDUM

NORTHROP, Senior District Judge.

Currently pending before the Court is Defendants' Motion to Dismiss Amended Complaint. Paper No. 10. Defendant filed a motion to dismiss Plaintiff's original complaint on June 15, 1993. Paper No. 4. Plaintiff filed an opposition and an amended complaint addressing several of the perceived deficiencies in the claims. Paper Nos. 8 & 9. Defendants renewed their motion in light of the allegations in the amended complaint (Paper No. 10), and the renewed motion is now ripe for consideration. *See* Paper Nos. 12 (Plaintiff's Opposition) & 13 (Defendants' Reply Memorandum). Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion should be granted in part and denied in part.

### BACKGROUND

Plaintiff Richard Blackwell ("Blackwell") entered into a contract with the Town of Delmar, Maryland ("Delmar"), to provide services as a Specification Writer/Cost Estimator ("SW/CE") for a housing rehabilitation program. Under the terms of the contract, Blackwell worked "on an independent contract basis" and was paid $350 for each set of specifications he completed. Defendants' Motion, Exhibit 1. The contract contained no fixed term but made the following provision for termination of the agreement:

> This agreement may be terminated at any time by the Town of Delmar Housing [sic] Rehabilitation Program upon the giving of seven (7) days written notice to the SW/CE if it is determined that the SW/CE has failed to perform theassigned [sic] duties according to the terms of this agreement.

*Id.* Defendant Linda M. Fairbank ("Fairbank") signed the contract on behalf of Delmar in her capacity as Grants Administrator. Fairbank also supervised Blackwell's work under the contract.

Francis J. Collins, Baltimore, MD, for plaintiff.

Fairbank and Blackwell were, however, more than supervisor and subordinate. They began a consensual sexual relationship, which Blackwell terminated in December, 1991. The break up of their relationship was acrimonious. Shortly thereafter, Fairbank allegedly complained about Blackwell to the Town Manager, Defendant Roberta Ernest, although the amended complaint does not specify the subject matter of the alleged complaints. In January 1992, Blackwell's contract was terminated. Blackwell alleges that he did not receive the notice required by the contract, nor was he informed of the specific reasons for termination of the contract. In addition, both before and after the contract was terminated, Fairbank allegedly communicated false statements impugning Blackwell's character to other employees and citizens.

Based on these events, Blackwell asserts four claims against Defendants. Against all three Defendants, Blackwell seeks relief pursuant to 42 U.S.C. § 1983, based on alleged deprivations of property and liberty interests (Count I). Blackwell also advances an abusive discharge claim against all three Defendants (Count II). In Count III, Blackwell asserts a breach of contract claim against Delmar alone, and in Count IV, Blackwell alleges that Defendants Fairbank and Ernest engaged in a civil conspiracy to deprive him of his employment.

### LEGAL STANDARD

A motion made pursuant to Fed. R.Civ.P. 12(b)(6) allows a claim to be dismissed for failure to state a claim upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the statement of the claim. *Chertkof v. Baltimore,* 497 F.Supp. 1252, 1258 (D.Md.1980). The standard for a motion to dismiss is well known: a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Faulkner Advertising Assoc. v. Nissan Motor Corp.,* 905 F.2d 769, 771–72 (4th Cir.1990). For the purposes of ruling on a motion under Rule 12(b)(6), the Court must accept the allega-

tions contained in the complaint as true, and must liberally construe the complaint as a whole. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Finlator v. Powers,* 902 F.2d 1158 (4th Cir.1990).

With respect to Blackwell's claimed deprivation of property, however, Defendants' arguments look not only to the allegations found within four corners of the complaint. In support of their arguments, Defendants rely on documentary evidence, namely, the contract between Blackwell and Delmar. Accordingly, to the extent Defendants' arguments hinge on the language of the contract, the Court must apply the standard for a motion for summary judgment. *See* Fed. R.Civ.P. 12(b).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In addition, the evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in the non-moving party's favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

### ANALYSIS

A. *Count I: Claims Pursuant to 42 U.S.C. § 1983*

Plaintiff claims that two constitutional deprivations entitle him to relief under 42 U.S.C. § 1983. First, he contends that the termination of his contract, without notice or an opportunity to be heard, resulted in a deprivation of property without due process of law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Second, Blackwell maintains

that the statements allegedly made by Fairbank both before and after the contract was terminated deprived him of a protected liberty interest.

■ Turning first to Blackwell's asserted property right, the Court finds that Defendants' motion should be denied. One reasonable inference from the evidence before the Court is that Blackwell's contract with Delmar created a mutual expectation of a continued working relationship, except in the event that Blackwell failed to perform adequately. As such, Blackwell may have a property interest subject to due process protection.

■ The starting point for any procedural due process claim is an analysis of whether the plaintiff has a protected property interest. *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1438 (4th Cir.1992) (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *accord, Richardson v. Town of Eastover*, 922 F.2d 1152, 1156 (4th Cir.1991). This interest does not emanate from the Constitution itself. Rather, it must be created through an independent source of rules or understandings. *Roth*, 408 U.S. at 576, 92 S.Ct. at 2709. To constitute a property right, Blackwell's interest in continuation of the contract with Delmar must rise above a mere "unilateral expectation." *Id.* Blackwell must have an entitlement based on "rules or mutually explicit understandings" between him and Delmar. *Perry v. Sindermann*, 408 U.S. 593, 600, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ In this case, the contract between Blackwell and Delmar is the independent source of any property right that may exist. Not every contractual obligation by a government entity gives rise to a constitutionally-protected property interest. *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966 (2d Cir.1988). Courts have recognized, however, that contracts can create entitlements subject to due process protection. *See, e.g., Unger v. National Residents Matching Program*, 928 F.2d 1392 (3d Cir.1991) and cases cited therein. Nevertheless, courts hesitate to constitutionalize state public contract law. *S & D Maintenance*, 844 F.2d at 966–67; *Unger*, 928 F.2d at 1398; *Linan–Faye Con-*

*struction v. Housing Authority of the City of Camden*, 797 F.Supp. 376, 379 (D.N.J.1992). To do so would stray "far afield from the great purposes of the due process clause." *Unger*, 928 F.2d at 1398. As a result, courts have encountered substantial difficulty differentiating the types of contract rights that are also property rights. *See, e.g., Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989) (assuming, without deciding, that the plaintiff had a protected property interest to avoid "the difficult task of line drawing" among types of contract rights).

The Fourth Circuit has held that not all rights derived from government contracts qualify as constitutional property rights. *Coastland Corp. v. County of Currituck*, 734 F.2d 175, 178 (4th Cir.1984). Nevertheless, this Court's research has not identified any Fourth Circuit precedent specifically addressing when contract rights become property rights. Other circuits, however, have addressed this complex question. *See Unger*, 928 F.2d at 1398–99 (summarizing Supreme Court cases, as well as cases from the First, Second, Fifth, Seventh, and Ninth Circuits). In addition, both the Fourth Circuit and this Court have cited with approval decisions from other circuits limiting the types of contract rights that can form the basis of constitutional due process claims. *See Coastland Corp.*, 734 F.2d at 178 (quoting *Jimenez v. Almodovar*, 650 F.2d 363 (1st Cir.1981)); *Chaudhry v. Prince George's County, Maryland*, 626 F.Supp. 448, 454 (D.Md.1985) (citing *Braden v. Texas A & M University System*, 636 F.2d 90 (5th Cir.1981) & *Bleeker v. Dukakis*, 665 F.2d 401 (1st Cir.1981)). Upon a review of decisions from jurisdictions that have addressed this question, the Court is persuaded to adopt the view of the Second Circuit.

■ Under the Second Circuit's reasoning, the determination of whether a contract right also constitutes property involves a two-step inquiry. First, the contract must create an entitlement, which can result from contract provisions permitting termination only for cause. *Hotel Syracuse, Inc. v. Young*, 805 F.Supp. 1073, 1084 (N.D.N.Y. 1992) (citing *S & D Maintenance*, 844 F.2d at 967). Second, the property right must be of

a type accorded protection under the due process clause. *Id.* To satisfy this second element, the government's action in terminating the contract must result in revocation of the plaintiff's "status". *Id.; S & D Maintenance,* 844 F.2d at 967.

■ This Court agrees with the Second Circuit's approach. The law is well-settled that an ordinary breach of contract is not actionable under § 1983. *See, e.g., Coastland Corp.,* 734 F.2d at 178 (every breach of contract by a state does not create a constitutional claim); *Braden,* 636 F.2d at 93 (same); *see also Medical Laundry Servs. v. Board of Trustees of the University of Alabama,* 840 F.2d 840, 843 (11th Cir.) (Roney, C.J., dissenting) (compiling cases holding that breach of contract by the state is not a constitutional deprivation), *modified,* 856 F.2d 128, *cert. denied,* 488 U.S. 826, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988), *appeal after remand,* 906 F.2d 571 (11th Cir.1990) (adopting dissent). The second step in the inquiry, therefore, ensures that "mere" contract disputes do not become the subject of constitutional litigation. *See, e.g., Yatvin v. Madison Metropolitan School District,* 840 F.2d 412, 416 (7th Cir.1988) (necessary to distinguish between "mere" contract rights and property rights to avoid making all breaches of public contracts violations of constitutional rights); *Brown v. Brienen,* 722 F.2d 360, 364 (7th Cir.1983) ("the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts").

■ Applying this test for defining contract-based property rights, the Court cannot enter judgment in favor of Defendants at this juncture. With respect to the first element, it appears that the contract at issue is not, by its written terms, terminable by Delmar at will. The language of the contract specifies only one situation in which the agreement may be terminated: if Delmar determined that Blackwell failed to perform his assigned duties according to the terms of this agreement. The fair import of this language is that Delmar could cancel the contract only for cause. *See also, Linton,* 964 F.2d at 1438 (because regulation authorized dismissal of employees for "inability to perform the work of the position satisfactorily", plaintiff could

only be discharged "for cause"); *cf. S & D Maintenance,* 844 F.2d at 968 (contract upon which plaintiff based due process claim did not create a property right because it granted defendant unconditional termination power).

Turning to the second prong, the Court cannot determine, on the record currently available, whether Blackwell had any special or protected status under the contract. The contract created a relationship closely analogous to employment, and an employment relationship satisfies the "status" element. Courts frequently have recognized that employment rights can rise to the level of constitutional property. *See, e.g., Linton,* 964 F.2d at 1438–39; *Brienen,* 722 F.2d at 364; *Hotel Syracuse,* 805 F.Supp. 1073 (N.D.N.Y. 1992). In *Hotel Syracuse,* the court explained the rationale for considering employment rights as property rights:

> [T]he importance to an individual of retaining his/her tenured employment can be much more substantial than [purely financial interests]. Losing one's job may impair one's self-worth; one may find it difficult, if not impossible, without protracted and costly search to find an equivalent job, and may in the end have to settle for an inferior job at lower pay. Further, the individual may be forced to seek public assistance to pay for such necessities as food and shelter.

805 F.Supp. at 1084–85. Blackwell apparently derived some, if not all, of his personal income from his contract with Delmar, and the Court reasonably may infer that Blackwell could (and perhaps did) suffer the same consequences from cancellation of his contract as those identified in *Hotel Syracuse.* Thus, the contract at issue in this case also arguably created the type of relationship with the government that would elevate his contract rights to constitutional property interests.

Defendants attempt to argue that Blackwell's position was a part-time position under a specific program that cannot be equated with a tenured employment position. Defendants have failed to substantiate their position. Nothing on the face of the contract, which is the sole evidence submitted by De-

fendants, states that the position was only part-time. The fact that Plaintiff was to be paid on a per-unit basis does not necessarily mean that there was not enough work for full-time employment. Moreover, although the contract refers to the "Town of Delmar Housing Rehabilitation Program", nothing in the document indicates that this is a short-term or otherwise limited undertaking that could not give rise to a property interest. Accordingly, the Defendants have not established, as a matter of law, that Plaintiff's contractual relationship with Delmar did not create constitutional property.

It may be that Blackwell's rights are more akin to the "mere" contractual rights of independent contractors that do not rise to the level of constitutional property. For example, in *Hotel Syracuse*, the court held that the plaintiffs' purely pecuniary interest in operating and owning hotels did not involve the type of status such that their contract rights rose to the level of constitutional property. 805 F.Supp. at 1085. In *S&D Maintenance*, the plaintiff had no cognizable status "beyond its temporary role as a government contractor." 844 F.2d at 967. Based on the record currently available, however, the Court reasonably may infer that Blackwell's situation is more like that of an employee than that of a commercial government contractor. As a result, the Court cannot rule in favor of Defendants on the instant motion.

Defendants also argue that Blackwell does not have a property right because the contract itself does not provide procedural protections and because Blackwell's right to bring a state court breach of contract action expired in January, 1993.[1] These arguments are unavailing.

■ The question of whether Blackwell has a property right is separate from that of what process is due. *Linton*, 964 F.2d at 1439. The contract does not have to specify the mechanism for notice and a hearing in order to create a right to such procedures.

Just as due process procedures cannot, in and of themselves, create the property right they are supposed to protect, *see Siu v. Johnson*, 748 F.2d 238, 244 (4th Cir.1984), so also, the absence of specific procedures for vindicating the right does not eliminate the property interest. *See Linton*, 964 F.2d at 1439 (although county code provided only post-termination procedures for discharged employees, the plaintiff was also entitled to some type of pre-termination process; process given was adequate under the circumstances) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).

Similarly, the Court may ultimately conclude that, if Blackwell has a property right, the process due to him consists solely of a state law breach of contract action,[2] which is now time barred. *See, e.g., S&D Manufacturing*, 844 F.2d at 966 (characterizing as "substantial" the argument that the only process to which plaintiff would have been entitled, if a property right had existed, consisted of a post-deprivation breach of contract action). Nevertheless, the fact that Blackwell would be prohibited from bringing an untimely breach of contract suit does not mean that he does not have a property interest in continuation of his contract with Delmar. It means only that he forfeited his right to whatever process was due by failing to act in a timely fashion.

■ The second aspect of Blackwell's due process claim concerns deprivation of a liberty interest occasioned by false statements impugning Blackwell's character allegedly made by Fairbank. Although the Court is skeptical of Plaintiff's ability to substantiate this claim, the Court declines to dismiss it at this stage of the proceedings.

In their original motion to dismiss, Defendants essentially argued that Blackwell failed to allege the requisite elements of a due process claim premised on reputational damage. *See, e.g., Stone v. University of Maryland Medical Systems*, 855 F.2d 167, 172 n. 5

---

**1.** The Court agrees with Defendants that Plaintiff's breach of contract claim is time barred. *See* Section C *infra.*

**2.** The Court does not at this time make any ruling with respect to what process is due, assuming that Blackwell has a protected property interest. Resolution of this question must await further briefing by the parties.

(4th Cir.1988) (setting out elements for a claim of deprivation of liberty based on reputational interests harmed by an employer's false statements). Blackwell responded by amending his complaint to include language that mirrors the language from the cases cited by Defendants in their motion. Defendants argue that Blackwell's amended complaint still fails to state a claim because he has not specified the remarks Fairbank allegedly made.

The Court agrees with Defendants that the allegations in original complaint were insufficient to state a claim for deprivation of a liberty interest. The Court also looks askance at Plaintiff's incorporation of boilerplate language from Defendants' memorandum in the amended complaint. If Plaintiff has knowledge of statements by Fairbank fairly supporting the claim, the better practice would have been to include those statements in the complaint.

Nevertheless, the Court will not dismiss the claim at this juncture. As Blackwell notes, Fed.R.Civ.P. 8 requires only notice pleading; it does not require that Plaintiff give a detailed recital of the facts upon which his claim is based. *See also Conley v. Gibson,* 355 U.S. at 47, 78 S.Ct. at 103. In addition, Fed.R.Civ.P. 11 prohibits Plaintiff or counsel from submitting any paper without reason to believe it is well-grounded in fact. Accordingly, the Court will permit Blackwell to pursue this claim. If, however, Blackwell cannot produce colorable evidence to support his allegations, the Court not only will dismiss his claim, but also will consider charging Plaintiff or his counsel with the costs and attorneys fees incurred by Defendants in opposition to what may turn out to be a baseless claim. *See* Fed.R.Civ.P. 11.

In light of these conclusions, Defendants' motion will be denied with respect to Count I of the amended complaint.

### B. *Count II: Abusive Discharge*

Blackwell contends that termination of his contract violated the clearly established public policy of Maryland, and as such, constituted an abusive discharge. *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981). Defendants argue that Blackwell has

failed to alleged with sufficient specificity the public policy ostensibly violated by Defendants' actions. *See id.* Defendants also argue that, even accepting Plaintiff's allegations as true, Blackwell's exclusive remedy is found in Md.Code Art. 49B, which prohibits retaliation and other types of discrimination based on sex. *Makovi v. Sherwin–Williams Co.,* 316 Md. 603, 561 A.2d 179 (1989).

■ The Court concludes that Blackwell has not stated a claim for abusive discharge. The gravamen of Blackwell's complaint is that Fairbank "utiliz[ed] her position of authority to punish and retaliate against [Blackwell] in order to coerce the continuation of a sexual relationship or to punish [Blackwell] for refusing to continue such a relationship." Amended Complaint, para 13. Such conduct violates Md.Code Art. 49B, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.; Katz v. Dole,* 709 F.2d 251, 254 (4th Cir.1983) (demands of sexual consideration in return for job benefits constitutes sexual harassment in violation of Title VII). Because Title VII and Article 49B provide a mechanism for redress, however, Blackwell cannot vindicate his rights under these statutes through a tort action for abusive discharge.

In *Makovi,* the Court of Appeals of Maryland considered a claim that a woman was unlawfully removed from her position as a chemist at a paint factory because she was pregnant. 316 Md. at 605, 561 A.2d 179. The employer's actions were prohibited by Title VII and Article 49B, and therefore, violated Maryland public policy. Nevertheless, the court concluded that the plaintiff could not maintain her action for abusive discharge because state and federal antidiscrimination statutes provided the sole remedy for the employer's conduct:

> In cases of discharge motivated by employment discrimination prohibited by Title VII and Art. 49B the statutes create both the right, by way of an exception to the terminable at-will doctrine, and remedies for enforcing that exception. Thus, the generally accepted reason for recognizing the tort, that of vindicating an otherwise

civilly unremedied public policy violation, does not apply. *Id.* at 626, 561 A.2d 179; *see also Chappell v. Southern Maryland Hospital,* 320 Md. 483, 578 A.2d 766 (1990) (retaliatory discharge actionable under Title VII and Article 49B could not form basis of abusive discharge claim).

 Blackwell's allegations that Defendants' conduct violated Maryland public policy embodied in criminal law against prostitution and pandering, as well as various Constitutional rights, do not change this result. The purpose of an abusive discharge action is to fill a void in the law by providing a remedy where no other statute or common law action provides redress. *Makovi,* 316 Md. at 611–12, 561 A.2d 179. Title VII and Article 49B eliminated the void with respect to the type of conduct about which Blackwell complains. As a result, the justification for permitting the abusive discharge action does not exist, and he cannot maintain his tort claim against Defendants.

## C. *Count III: Breach of Contract*

 In Count III, Blackwell asserts a breach of contract claim against Delmar. Delmar counters by pointing out that the claim is time barred. Breach of contract claims against municipal corporations must be brought within one year from the date on which the claim arose. Md.Code Art. 23A, § 1A(c). The claim in this case arose sometime during January, 1992. Amended Complaint, para. 1. The original complaint was filed on May 3, 1993. Plaintiff maintains that the claim was properly filed because Delmar has waived the statute of limitations defense. This is not the case. Delmar raised this defense in the original motion to dismiss and reasserted it in the renewed motion. The claim was filed outside the limitations period, and as a result, must be dismissed.

## D. *Count IV: Civil Conspiracy*

The sole argument advanced by Defendants Fairbank and Ernest in opposition to Blackwell's conspiracy claim is that it cannot survive if all of Blackwell's other claims are dismissed. Given that the Court will not, at this time, dismiss Count I of the amended complaint, this argument is unavailing. As a result, Defendants' motion will be denied with respect to Count IV of the amended complaint.

## E. *Discovery*

 Discovery disputes in this case have been referred to Magistrate Judge Catherine C. Blake. Magistrate Blake granted a motion to compel filed by Plaintiff. Counsel for Defendants contacted this Court by letter indicating that, notwithstanding Magistrate Blake's order, Defendants do not wish to proceed with discovery. Counsel indicated the belief that resolution of the motion to dismiss would obviate the need for discovery. Counsel is reminded, as indicated in Magistrate Blake's ruling, that the filing of a dispositive motion does not result in a stay of discovery under the Local Rules for the District of Maryland unless jurisdiction is challenged. Defendants raised no jurisdictional arguments in the instant motion, and Magistrate Blake appropriately ordered discovery to continue. If counsel had reason to challenge Magistrate Blake's ruling, counsel could have appealed the order to this Court. Counsel did not appeal the ruling, and this Court expects that Defendants will fully comply with this and any other discovery ruling without delay.

## CONCLUSION

For the reasons stated above, Defendants' motion will be granted in part and denied in part. The motion will be denied with respect to Counts I and IV. Counts II and III will be dismissed with prejudice.

A separate Order will issue.