Ronald O. LINTON, Plaintiff–Appellant,

v.

FREDERICK COUNTY BOARD OF COUNTY COMMISSIONERS; R. Wayne Keeler, Defendants–Appellees.

No. 91–2189.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1992.

Decided May 22, 1992.

Ralph Gordon, Gordon & Simmons, Frederick, Md., argued (M. Bridget Bielinski, on brief), for plaintiff-appellant.

Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, Md., argued for defendants-appellees.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

On April 15, 1991, Robert O. Linton was given notice by Frederick County that he was being terminated from his employment as chief of the county's highway operations for the reasons given to him in a written "Notice of Dismissal." He was given the choice of either resigning or being fired. When Linton asked for time to discuss the situation with his family, the county agreed to receive his decision the next day, April 16. On April 16, 1991, when Linton refused to resign, he was fired. Several weeks later, he filed this action against county officials under 42 U.S.C. § 1983, contending that the county denied him due process because he was not given adequate pretermination notice of the specific charges against him, an explanation of the evidence supporting those charges, and a meaningful opportunity to respond. The district court entered a summary judgment in favor of the county officials, and this appeal followed. 773 F.Supp. 784. Because we conclude that Linton was afforded constitutionally sufficient pretermination process, we affirm.

## I

For over 20 years Ronald O. Linton was employed by the Frederick County Highway Department, and during the last twelve he served as Chief of the Highway Operations Division. On April 15, 1991, after returning from a two-week vacation, Linton was met by Robert Hayes, Deputy Director of the Department of Public Works, and Linton's immediate supervisor, Anthony Giancola, Bureau Chief of the Bureau of Highway and Transportation. When Hayes and Giancola questioned Lin-ton about a site complaint issued by the Maryland Department of Natural Resources (DNR) on April 3, 1991, for work performed in state waters without a permit, Linton responded that he had heard something about it. According to Hayes, Linton then proceeded to explain that the DNR citation was not justified because water was not flowing in the stream at the time of the work. Hayes then handed Linton a two-page, single-spaced memorandum entitled "Notice of Dismissal."

The Notice detailed how county construction work under Linton's supervision "in the waters of the State" had been performed without a permit as required by the state DNR, resulting in the April 3 citation from the state. The Notice recited that unpermitted work was similarly performed in 1980 and 1990 when the county also received citations from state authorities for the same reason. The Notice pointed out that unpermitted work had been authorized by Linton despite admonitions to the contrary from Anthony Giancola. It elaborated that corrective work directed by the state to Frederick County in connection with a 1990 violation still had not been performed, despite state investigatory reports in July, September, October, and November of 1990 and despite the direct instructions by Giancola to perform the work. Finally the Notice cited Linton for improperly dumping waste material at "14+ sites used by the Highway Operations Division."

The Notice of Dismissal complained on a more general level about Linton's repeated failures to use "best management practices," noting that county sediment control inspectors and the state DNR inspector "issued numerous field inspection reports citing the lack of BMP [Best Management Practices] and directing their use in 1990." Reciting an example, the Notice observed that despite an April 2, 1990, letter to Linton that directed him to use "best management practices," he had failed to do so.

At the meeting on April 15 Hayes gave Linton the option of resigning in lieu of dismissal. When Linton requested some time to discuss the situation with his fami-

ly, Hayes arranged to meet with Linton at 8:00 a.m. on April 16, 1991, to receive his decision. At the meeting with Hayes the next morning, Linton refused to resign and was accordingly dismissed.

In accordance with administrative procedures prescribed by county ordinance, Linton appealed the decision to the County Planning Director who affirmed, and then to the Board of County Commissioners, consisting of five commissioners. The commissioners in executive session conducted an all-day hearing on July 3, 1991, taking testimony and receiving evidence and argument of counsel. The Board filed and published its formal opinion on July 17, 1991 affirming the termination decision.[1]

Review of the Board's decision is pending in a state court proceeding consolidated with the other state claims that were remanded by the district court in this case.[2]

In this appeal, Linton only challenges the district court's decision dismissing the federal claims that allege an inadequacy of the pretermination process.

## II

Linton contends that the district court erred in granting summary judgment in favor of the defendants on his procedural due process claim. He argues that the defendants violated his right to pretermination process because, "without any prior warning, [he] was confronted with a two page Notice of Dismissal that he did not fully understand." He argues that the notice was too general, failing to provide the basic facts underlying certain general allegations, revealing little of the evidence relied upon for more specific allegations, and purporting to dismiss him for "other inci-

dents" not otherwise described therein. He also contends that the short meeting on April 15, five minutes according to him and twenty minutes according to Hayes, coupled with the lack of detail in the Notice, did not afford him a meaningful opportunity to respond. He claims he was "overwhelmed and underinformed." Similarly, the meeting on April 16, when Linton told Hayes that he would not resign and was thereupon fired, he contends, afforded him no opportunity to respond. He contends that the county officials therefore deprived him a property interest without due process in violation of the Fourteenth Amendment.[3]

■ Whether Linton was deprived of a property interest without due process depends first on whether he had a property right in his continued employment and on the nature of that right. The Fourteenth Amendment does not itself create property rights but rather affords a protection to them. Property rights are determined from sources independent of the Constitution, such as, in this case, state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ At the time of his termination, Linton was a "classified employee" of Frederick County and by reason of Frederick County law could be discharged only for cause. *See* Frederick County, Md., Personnel Rules, ch. VI, § 1, and ch. VII, § 6, *adopted by* Frederick County, Md., Ordinance No. 88–31–508 (June 21, 1988) (defining dismissals as "discharges or separations made for delinquency, misconduct, inefficiency, or inability to perform the work of the position satisfactorily"). Linton,

1. The decision of the Board was rendered after the district court entered its summary judgment and was therefore not considered by the district court.

2. Pendent state law claims were filed in this case and remanded by the district court to the Circuit Court of Frederick County after the district court dismissed the federal claims.

3. Linton also claims that he was deprived of pretermination due process under Article 24 of the Maryland Declaration of Rights. Because

Maryland courts have interpreted this provision consistently with the Fourteenth Amendment Due Process Clause, we will resolve these claims concurrently. *See Department of Transp. v. Armacost*, 299 Md. 392, 474 A.2d 191, 203 (1984) ("The due process clauses of Article 24 of the Maryland Declaration of Rights and the fourteenth amendment to the federal constitution have the same meaning; and we have said that Supreme Court interpretations of the federal provision are authority for interpretation of Article 24.").

therefore, had a constitutionally protected property interest in his continued employment with the Frederick County Highway Department and the county could not deprive him of that interest without due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Garraghty v. Jordan,* 830 F.2d 1295, 1299 (4th Cir.1987). The only question, therefore, is what process was due. *See Loudermill,* 470 U.S. at 538, 541, 105 S.Ct. at 1491, 1492–93 ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'") (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

It is fundamental to established principles of due process that, as a prerequisite to an intentional deprivation of a protected property interest, the government must provide some notice and an opportunity for hearing appropriate to the nature of the case. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Even though Frederick County provides for post-termination administrative hearings and appeals, *see* Frederick County, Md., Personnel Rules, ch. IX, § 1, which Linton pursued, the Supreme Court in *Loudermill* held that a public employee with a property interest in continued employment who is given post-termination administrative procedures must nevertheless, before termination, be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. When post-termination administrative procedures are afforded, such pretermination procedure functions only as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495. The pretermination process need not resolve the propriety of the discharge. *Id.* at 545, 105 S.Ct. at 1495. *See also Gniotek v. City of Philadelphia,* 808 F.2d 241, 244 (3d Cir.1986) ("Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case."), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987).

The operative facts in this case are essentially undisputed and relate to the content of the notice given to Linton, his response, and the historical context. The Notice of Dismissal given to Linton on April 15 contained both specific charges and generalized accusations. A fair reading leads to the following paraphrase of the Notice:

(1) Linton authorized unpermitted work immediately prior to his vacation which caused Frederick County to be cited by the state Department of Natural Resources on April 3, 1991.

(2) Linton's operations were similarly cited for unpermitted work in 1980 and 1990.

(3) Linton failed to correct the 1990 unpermitted work despite state field investigation reports and specific instructions to do so by his supervisor, Anthony Giancola.

(4) Fourteen or more sites in the county were used by highway operations for improper waste disposal.

(5) Linton failed to follow "best management practices" in work despite "numerous field inspection reports" revealing his failure to do so, and on April 2, 1990, he was directed by the county sediment control inspector specifically to do so.

(6) Linton was being dismissed from his employment for "misconduct, inefficiency and an inability to perform the work of [his] position satisfactorily" as evidenced by the described incidents "as well as other incidents" which were unspecified.

According to Hayes, whose version of events Linton does not dispute on this point, when Linton was confronted with the Notice of Dismissal on April 15, Linton stated that he had heard something about the April 3 DNR citation and confirmed that he was personally in charge of the

work for which the citation was issued because "his foreman was off that day." He explained that he did not believe a DNR permit was required because no water was in the stream when work was being performed. There is no evidence in the record to suggest that Linton expressed a lack of understanding about any of the charges or that he protested that it was not he who was involved in the charged conduct.

■ In light of Linton's response and the historical context, there can be little doubt that the explanation given Linton satisfied the objective of pretermination process to provide "an initial check against mistaken decisions." *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495. The Notice of Dismissal was fairly directed to Linton's repeated authorizations of work without the necessary state permits and his refusal to comply with specific directives to obtain such permits, which form an adequate basis for termination of employment under Frederick County law.[4] Due process does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive explanation be afforded as to permit Linton to identify the conduct giving rise to the dismissal and thereby to enable him to make a response. *See Gniotek*, 808 F.2d at 244 (upholding sufficiency of notice which was specific enough to allow employee "the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges"). Furthermore, although the discussion on April 15 focused only on the April 3 DNR citation for performing unpermitted work, this was but the last in a series of similar incidents listed in the notice and of which Linton had personal knowledge. *See Sei-*

*bert v. State of Okla. ex rel Univ. of Okla. Health Sciences Ctr.*, 867 F.2d 591, 598 (10th Cir.1989) (considering "extensive history of warnings" in determining whether discharged employee received pretermination due process). There is no evidence in the record to suggest that Linton misunderstood any of the charges.

■ While the time for response was short, as Linton claims, and may be a factor in considering whether the pretermination process was adequate, the quantity of time alone does not provide the measure of adequacy. *See Gniotek*, 808 F.2d at 244 (noting that lack of advance notice is not a *per se* violation of due process); *cf. Goss v. Lopez*, 419 U.S. 565, 582, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975) (considering the due process rights of public school students facing suspension). Linton's confirmation on April 15 that he was the relevant supervisor concerning the April 3 citation evinces an opportunity to deny that he was involved in the charged conduct. The ability of the pretermination process to avoid mistake was bolstered by the overnight period from April 15 to April 16, when Linton was given the opportunity to consider whether to resign.

■ The more difficult question is whether the inclusion of general charges in the Notice of Dismissal fatally flawed the notice of specific charges. For instance, the Notice of Dismissal referred to improper dumping at "14+ sites" which were not identified. It also concluded that termination of employment was required on the basis of the specific incidents described, "as well as other incidents." Alone, these allegations provide inadequate information

4. Chapter VI, § 1, of the Frederick County, Md., Personnel Rules permits the dismissal of a "classified" employee for "delinquency, misconduct, inefficiency or inability to perform the work of the position satisfactorily." In addition, § 4 of this chapter allows the imposition of disciplinary action for, among other things, "[v]iolation of County Ordinances, administrative regulations or intra-departmental rules." The April 3 site complaint referred to in the Notice of Dismissal was issued for the department's violation of Md.Nat.Res.Code Ann. §§ 8–801 to –814 (1990 & Michie 1991) (requiring permits for

appropriation or use of waters, reservoirs, and dams). If true, this charge, standing alone, would have justified Linton's dismissal. Moreover, the dismissal notice explained that Linton had failed to follow the directions of the state DNR and his immediate supervisor, Giancola, to correct specific regulatory violations. Linton's refusal or inability to comply with these directives also constituted sufficient grounds for disciplinary action under the personnel rules. *See* Frederick County, Md., Personnel Rules, ch. VI, § 4(A), (B), and (L).

to focus Linton on the operative conduct relied on to fire him. *See Fraternal Order of Police Lodge No. 5 v. Tucker,* 868 F.2d 74, 80 (3d Cir.1989).

If the specific charges in the Notice were included as a pretext to conceal the real cause of termination, which was buried in generalized accusations, it could hardly be argued that an employee was provided with sufficient information to recognize the operative conduct and be able to respond. Yet if the core charges giving rise to the termination are detailed, the inclusion of generalized language can hardly be fatal to the effectiveness of the notice. To conclude otherwise would unfairly penalize those attempting, in good faith, to detail the core charges and, at the same time, to be thorough by covering all possibilities. In the absence of any evidence that the specific charges were a pretext to conceal the real cause of termination or that the employee was actually confused at the time he was given notice, the generalized language is no more than harmless surplusage. Therefore, when a notice adequately details charges on which the termination is based and those charges justify the termination sanction, the notice is not rendered defective for due process purposes by the inclusion of unspecific and generalized catch-all allegations.

■ In this case, while we agree that the allusion to improper dumping at "14+ sites" without a description of the sites or the time periods and the catch-all "other incidents" do not, by themselves, adequately inform, the charges on which the county clearly relied centered on the April 3 DNR citation, which is described first and in detail in the Notice of Dismissal. The importance of this single incident was confirmed by the fact that only it was the subject of conversation among Linton, Hayes, and Giancola at the April 15 meeting. There is no evidence in the record to suggest that this ground was a pretext for firing Linton on other, undisclosed grounds.

In the context of the undisputed facts presented in this case, we conclude that Linton received adequate pretermination notice of the cause for his dismissal. We also are satisfied that he had sufficient opportunity to respond, and in fact did respond, with reasons why the proposed termination should not be undertaken. Furthermore, full post-termination process was available and relied on to challenge the merits of the county's decision. Because we conclude that the requirements of due process were satisfied, the judgment of the district court is

*AFFIRMED.*