59 F.3d 166
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Laura HERBERT, Individually and as CO-ADMINISTRATOR of the
Estate of Freddie Herbert; Freddie Herbert, Sr.,
Individually and as Co-Administrator of the Estate of
Freddie Herbert; Estate of Freddie Herbert, Plaintiffs-Appellants,
v.
Joseph HENNEBERRY, Individually and in his capacity as
Director, Patuxent Institution; Archie Gee, Individually
and in his capacity as Warden, Patuxent Institution;
William Smith, Individually and in his capacity as Director
of Security, Patuxent Institution; Keith Greene, a
Corrections Officer; David Mckoy, a Corrections Officer,
Defendants-Appellees.
 No. 94-2157.
 United States Court of Appeals, Fourth Circuit.
 Argued May 1, 1995.
Decided June 20, 1995.
 
 ARGUED: Herbert Arthur Terrell, Bel Air, MD, for Appellants. Richard Bruce Rosenblatt, Assistant Attorney General, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, Baltimore, MD, for Appellees. ON BRIEF: Allan J. Culver, Jr., Bel Air, Maryland, for Appellants. J. Joseph Curran, Jr., Attorney General of Maryland, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, Baltimore, MD, for Appellees.
 Before RUSSELL and WILKINS, Circuit Judges, and LIVELY, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Laura Herbert and Freddie Herbert, Sr. (the Herberts), individually and as co-administrators of the estate of their son, Freddie Herbert, Jr. (Herbert), brought this action pursuant to 42 U.S.C.A. Sec. 1983 (West 1994) after Herbert was killed while incarcerated in Patuxent Institution (Patuxent), a Maryland correctional facility.[1] They appeal a jury verdict in favor of Director Joseph Henneberry, Warden Archie C. Gee, and officers Keith Greene and David McKoy. Finding no error, we affirm.
 
 I.
 
 2
 The circumstances surrounding Herbert's death are not seriously disputed. Patuxent is a maximum-security facility that provides treatment and counseling programs to selected inmates, who are housed in a facility known as the 128 Building. This building is divided into halves, each of which contains two barracks-style dormitories, a day room, and a bathroom. The halves are connected by a central observatory from which the officer on duty can view all of each day room and a portion of each dormitory and bathroom. However, an officer in the observatory cannot view both halves of the 128 Building simultaneously. Two officers are assigned to each shift in the 128 Building--one is stationed inside the observatory, while the other roams throughout the dormitory areas.
 
 
 3
 On June 10, 1993, while viewing a boxing match between inmates Eugene Taylor and Eric Bethea, Herbert commented that Taylor was taking advantage of Bethea. After the match, Herbert followed Taylor to his dormitory; shortly thereafter, Taylor stabbed Herbert in the side with a weapon fashioned from a bucket handle. Inmates summoned officers Greene and McKoy, who had been occupied with a routine count of inmates on the other side of the building and did not observe the incident, and informed them that Herbert had slipped on some water, hit his head, and was lying unconscious on the day room floor. The officers summoned emergency personnel. Herbert died several hours later; the stab wound was not discovered until an autopsy was performed.
 
 
 4
 The Herberts then filed this action, alleging violations of the Eighth and Fourteenth Amendments of the United States Constitution and unspecified articles of the Maryland Declaration of Rights. Specifically, the Herberts alleged that the defendants had been deliberately indifferent to Herbert's medical needs; that supervision in the 128 Building was inadequate; and that the Herberts had been denied a liberty interest in the continued companionship of their son without due process of law.
 
 
 5
 Trial was scheduled to begin on Tuesday, July 5, 1994. On June 22, the Herberts moved for the issuance of writs of habeas corpus ad testificandum for several inmates they wished to call to testify. The district court granted the motion and signed the writs on June 24, but did not issue the writs to the United States Marshals Service until Monday, June 27. As a result, the Marshals Service did not have adequate time to produce the inmates. The error was discovered near the end of the first day of trial, at which time a representative of the Marshals Service informed the court that five business days were needed to produce an inmate witness. The following day, the district court granted the Herberts' request for permission to read into the record Bethea's deposition testimony in lieu of live testimony from the subpoenaed inmates. The jury ultimately returned a verdict in favor of the defendants on all claims.
 
 II.
 
 6
 The Herberts first argue that the district court erred in failing to reissue the writs of habeas corpus ad testificandum. They maintain that the district court failed to issue the writs timely and to issue them to the actual custodian of the inmates. Although the record gives no indication that the Herberts requested a continuance or moved for a reissuance of the writs, they maintain that the district court was obligated to assist them in the presentation of their case by sua sponte ordering such a remedy. The parties agree that the decision of the district court with respect to this issue is reviewed for an abuse of discretion.
 
 
 7
 We agree with the Herberts that the district court improperly issued the writs to the United States Marshals Service rather than to appropriate state officials, see Pennsylvania Bureau of Correction v. United States Marshals Serv., 474 U.S. 34, 38 & n. 4 (1985); that the motion requesting the writs was timely; and that errors by the district court in issuing the writs resulted in the inmates' absence from trial. Nevertheless, the Herberts proposed the alternative of reading Bethea's deposition into the record, and we find no abuse of discretion in the decision of the district court to accommodate this request rather than to adopt another remedy sua sponte.
 
 III.
 
 8
 The Herberts also maintain that the district court erred in refusing their request to instruct the jury separately on the Eighth and Four teenth Amendments and on Articles 19 and 24 of the Maryland Declaration of Rights.[2] Instead, the district court charged the jury only on the Eighth and Fourteenth Amendments, having concluded that there was no difference between these provisions and Articles 19 and 24. We review for an abuse of discretion the decision of the district court "to give (or not to give) a jury instruction." United States v. Russell, 971 F.2d 1098, 1107 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993).
 
 
 9
 The district court properly concluded that the due process requirements of Articles 19 and 24 are coextensive with the corresponding provisions of the United States Constitution. See Durham v. Fields, 588 A.2d 352, 357 (Md. Ct. Spec.App.), cert. denied, 593 A.2d 668 (Md.1991). Thus, a determination under the United States Constitution necessarily disposes of the claim under the Maryland Declaration of Rights. Cf. Linton v. Frederick County Bd. of County Comm'rs, 964 F.2d 1436, 1438 n. 3 (4th Cir.1992) (conducting concurrent analysis of claims under the Fourteenth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights).
 
 
 10
 The Herberts maintain, however, that even though the substance of the federal and state provisions is the same, there are at least two material differences that required separate instructions. First, the Herberts assert that the defendants are not entitled to qualified immunity under the Maryland Declaration of Rights. They argue that the jury could have found that the defendants violated the United States Constitution but that they were entitled to qualified immunity; thus, failure to instruct on Articles 19 and 24 deprived the Herberts of the opportunity to prevail on the merits under the Maryland Declaration of Rights. We need not decide this issue because the district court did not give a qualified immunity instruction; therefore, any verdict in favor of the defendants must have been based on the merits of the claim.
 
 
 11
 Second, the Herberts contend that separate instructions should have been given because they would have been entitled to attorneys' fees if they had prevailed under the Maryland Declaration of Rights even if they had failed to prove a violation of the United States Constitution. They point to County Executive v. Doe, 479 A.2d 352, 358-59 (Md.1984), as support for this argument. However, Doe merely provides that when a plaintiff alleges alternative causes of action under Sec. 1983 and under state law, attorneys' fees may be awarded pursuant to 42 U.S.C.A. Sec. 1988 (West 1994) if the plaintiff prevails on the state claim and the Sec. 1983 claim is undecided but has substantial merit. Id. at 358. The Doe court specifically distinguished cases such as this one, in which the Sec. 1983 claim is decided adversely to the plaintiff. Id. at 359. Doe therefore does not support the Herberts' argument that the jury should have been separately instructed under state and federal law. Accordingly, we conclude that the district court did not abuse its discretion with respect to the jury instructions.
 
 IV.
 
 12
 Finally, the Herberts contend that the district court erred in denying their motion for judgment as a matter of law or in the alternative for a new trial on the basis that the evidence was insufficient to support the jury's verdict. We review de novo the grant or denial of a motion for judgment as a matter of law. See Benesh v. Amphenol Corp. (In re Wildewood Litigation), No. 93-2459, 1995 WL 226563, at * 2 (4th Cir. Apr. 18, 1995). After viewing all of the evidence in the light most favorable to the defendants, we have no difficulty determining that a reasonable jury could have returned a verdict in their favor. See id. And, we conclude that the district court did not abuse its discretion in denying the Herberts' motion for a new trial. Id.
 
 
 13
 Having determined that all of the Herberts' assertions of error are without merit, we affirm.
 
 AFFIRMED
 
 
 [1]
 The Herberts also brought several state-law claims
 
 
 [2]
 For the first time on appeal, the Herberts urge that the district court also should have instructed the jury on Articles 16 and 25 of the Maryland Declaration of Rights. However, the Herberts did not request such instructions, and they have not alleged that the failure of the district court to charge the jury on Articles 16 and 25 "would be plain error or would result in a fundamental miscarriage of justice." Muth v. United States, 1 F.3d 246, 250 (4th Cir.1993). We therefore decline to consider this argument