**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-1947**

───────────

BARBARA ANNETTE SMITH,

> Plaintiff – Appellant,

> v.

COMMISSIONERS OF ST. MARY'S COUNTY, MARYLAND; SHERIFF TIMOTHY K. CAMERON, St. Mary's County Sheriff, In his Official Capacity,

> Defendants – Appellees.

───────────

Appeal from the United States District Court for the District of Maryland at Greenbelt. Paula Xinis, District Judge. (8:20-cv-03785-PX)

───────────

Argued:  March 9, 2023                              Decided:  July 7, 2023

───────────

Before KING and RICHARDSON, Circuit Judges, and Joseph DAWSON III, United States District Judge for the District of South Carolina, sitting by designation.

───────────

Affirmed by unpublished opinion. Judge Richardson wrote the opinion, in which Judge King and Judge Dawson joined.

───────────

**ARGUED:** Thomas J. Gagliardo, GILBERT EMPLOYMENT LAW, P.C., Silver Spring, Maryland, for Appellant. Kevin B. Karpinski, KARPINSKI, CORNBROOKS & KARP, P.A., Baltimore, Maryland; Carl N. Zacarias, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Annapolis, Maryland, for Appellees. **ON BRIEF:** Gary M. Gilbert, Joseph D. Gebhardt, James A. Hill, Elizabeth A. Wilson, GILBERT EMPLOYMENT LAW, P.C., Silver Spring, Maryland; Lenore C. Garon, LAW OFFICE OF LENORE C.

GARON, PLLC, Falls Church, Virginia, for Appellant.  Brian E. Frosh, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee Sheriff Timothy K. Cameron.

―――――――

Unpublished opinions are not binding precedent in this circuit.

RICHARDSON, Circuit Judge:

Barbara Smith was fired from her position with the St. Mary's County State's Attorney's Office. The County warned her ahead of time that she was being investigated for improperly handling confidential information and allowed her to respond to those allegations. It then fired her for conduct related to the alleged improper handling. She appealed that decision. A review board upheld her termination after a two-day hearing. She now argues that the County and the County Sheriff violated her due process rights by failing to provide adequate pre- and post-termination procedures. The district court dismissed her claims, finding the procedures constitutionally adequate. We agree and affirm. The County and Sheriff provided sufficient process to Smith.

## I.      Background

Barbara Smith was a "merit" employee for the Saint Mary's County State's Attorney's Office. The County's merit employees can be fired only for cause. Following a months-long investigation, Smith was fired for insubordination and various policy violations.

Smith first got wind that she might be in trouble in mid-July 2019. She received an email from Jaymi Sterling, the Office's Chief of Staff, telling her she had to meet with Sterling and Buffy Giddens, the Chief of the District Court, that day. Smith disobeyed Sterling's order by not meeting with them then. When she finally met them, Sterling and Giddens asked her if she had accessed the file of a recent arrestee, Alex Murphy, in a confidential government database called "Optiview" and if she had any business reason for

3

doing so.[1]  She denied accessing the file and conceded she had no reason to do so.  After the meeting, Sterling and Giddens notified Smith in writing that she was suspended with pay.  The notice cited allegations that she improperly shared confidential information and warned her that she could be terminated if those allegations were supported.

Over the next few months, County officials contacted Smith several times about the incident.  The Sheriff's Office interviewed her in July, asking her questions "focused on unauthorized disclosure."  Appellant's Reply Brief at 11 n.6.  The County emailed her twice about ongoing investigations related to the Optiview allegations.  She and her lawyer also met with several County officials in September.  The officials asked her where she kept her computer password and why she had delayed the July meeting with Sterling and Giddens.  They also told her the Sheriff's Office revoked her Optiview access.

About a week later, Smith received an email notifying her that she was being fired and identifying three reasons for her termination:  (1) refusing to meet Sterling and Giddens when ordered to in July; (2) violating the County's policies and procedures by accessing Murphy's file without reason and lying about it; and (3) violating the County's IT use and security policy by keeping her name and password posted to her computer monitor.  The

---

[1] Optiview is a database that contains information on criminal defendants.  State's Attorney's Office and Sheriff's Office workers need to access it to perform their duties. But they are not allowed to access Optiview for non-business reasons.

Alex Murphy, who had been arrested on assault charges, revealed to his booking officer that someone had leaked information to him from this database.  This sparked an investigation to find the leaker.  That investigation produced forensic evidence that Smith's computer was used to access Murphy's file during working hours and that she was the only one to do so without an apparent reason.  But, based on the allegations in the complaint, Smith did not know any of this when she was first contacted by Sterling.

4

email also noted that Smith could not perform her duties because her Optiview access had been revoked.

Smith did not take her termination lying down. She filed a "grievance" with the State Attorney and Director of Human Resources challenging her termination. When this was denied, she appealed to the County's Grievance Review Board.

The Board held a two-day hearing at which Smith was represented by counsel, could present evidence and witnesses, and could cross-examine adverse witnesses. The Board reviewed three grounds for Smith's termination: (1) "Insubordination"; (2) "Violation of IT Policy"; and (3) "Access of Murphy Case File; Grievant's Denial; Database Access." It found that Smith was insubordinate but that this was not an adequate ground for termination. It also found that Smith had not violated the IT Policy. Lastly, it found that Smith improperly accessed Murphy's file, lied about it, and—as a result—was "appropriately" denied Optiview access. J.A. 38. The Board then affirmed Smith's termination.[2]

Smith sued the St. Mary's County Commissioners and the Sheriff of St. Mary's County, in his official capacity, under 42 U.S.C. § 1983.[3] Smith brought ten claims against

---

[2] She appealed the Board's decision to the County Commissioners, who upheld it.

[3] The Sheriff claims he is immune from suit, invoking so-called Eleventh Amendment immunity. But we do not reach the immunity issue since he expressly did not "insist" on his defense at oral argument and because we hold that he did not violate Smith's due process rights. *See Koon v. North Carolina*, 50 F.4th 398, 404 n.4 (4th Cir. 2022).

5

Defendants under federal and state law.[4]  Only a handful of those claims are now before us, all of which relate to alleged due process violations.  In Counts I and II, Smith claimed that the County gave her insufficient pre-termination procedures.  In Counts III and IV, Smith challenged her post-termination procedures, arguing she impermissibly bore the burden of proof at her Board hearing.  And in Counts VII and VIII she alleged that her post-termination procedures were inadequate because the Board could not reinstate her.

The district court granted Defendants' Rule 12(b)(6) motion to dismiss, rejecting all of Smith's claims.  It agreed with Smith that she had a protected property interest in her job and so was entitled to due process.  But it also held that she had been given all the process she was constitutionally entitled to.  Smith appeals the dismissal of these claims.

## II.    Discussion

When a tenured public employee—that is, one with a protected interest in their employment—is fired, due process requires both a "very limited" pre-termination hearing and a "more comprehensive" post-termination hearing.  *Gilbert v. Homar*, 520 U.S. 924, 929 (1997).  Smith was a tenured public employee.  And she argues the district court erred by holding she was afforded sufficient pre-termination procedures.  She also asserts that her post-termination procedures were inadequate because she bore the burden of proof at her hearing and because the Board could not reinstate her.

---

[4] The state-law due-process claims are assessed under the same framework as the federal ones.  *See Vehicle Admin. v. Armacost*, 474 A.2d 191, 203 (Md. 1984); *City of Annapolis v. Rowe*, 717 A.2d 976, 977 (Md. Ct. Spec. App. 1998).

6

We review the district court's decision de novo, taking all well pleaded facts as true and construing them in the light most favorable to Smith. *See Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502, 504 (4th Cir. 1999). We generally consider only the complaint. Yet since Smith attached several exhibits to her complaint and incorporated them by reference, we also consider those. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 10(c)). To survive, Smith must have adequately pled enough facts to plausibly state a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). She has not. Even giving Smith every benefit of the doubt, she has not plausibly alleged she received constitutionally inadequate pre- or post- termination procedures.

### A.    Defendants provided constitutionally adequate pre-termination procedures

A "root requirement" of procedural due process is giving an individual some kind of hearing before depriving them of their property.[5] *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). In the public employment context, that hearing need not be elaborate. *See id.* at 546. It can be informal and does not need to "resolve the propriety of the discharge." *Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs*, 964 F.2d 1436, 1439 (4th Cir. 1992). It just needs to serve as "an initial check against mistaken decisions." *Loudermill*, 470 U.S. at 545.

---

[5] In some "extraordinary" and "unusual" scenarios, deprivations that occur without a pre-termination hearing are constitutional, so long as there is adequate post-termination process. *Fuentes v. Shevin*, 407 U.S. 67, 90–93 (1972) (listing cases). This is not one of those scenarios. *See Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1307 (4th Cir. 1992); *Loudermill*, 470 U.S. at 546.

This initial check must provide two things:  notice and an opportunity to be heard. The employee must know the nature of the charges against them, either because they were directly informed of the charges or context makes the charges clear.  *See Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1465 (4th Cir. 1990); *see also Linton*, 964 F.2d at 1440.  And while an employee has no right to know all the evidence against them, they do have to know enough so that they can identify the conduct giving rise to their termination.  *Linton*, 964 F.2d at 1440.  The employee must also be allowed to respond to those charges and explain why they should not be fired.  *Id.*  Essentially, an employer satisfies due process at this stage by informing an employee why they are being fired and letting them make some argument against it.

Smith had adequate pre-termination notice.  She was fired in early October for three reasons:  (1) violating the County's policies and procedures by accessing Murphy's file without reason and lying about it; (2) being insubordinate by refusing to meet Sterling and Giddens about the Murphy incident when ordered to in July; and (3) violating the County's IT use and security policy by keeping her name and password posted to her computer monitor (which came to light during the Murphy-related investigation).  She was put on notice of the first grounds in mid-July when she was asked if she improperly accessed Murphy's file and then received written notice that she was suspended for allegedly leaking confidential information.  From that point forward she knew there was an investigation into

8

her alleged mishandling of Murphy's Optiview data that could end in termination.[6]  She also knew from the September meeting with County officials that this investigation was looking into her July refusal to meet her supervisors and her cybersecurity practices—the remaining grounds for her termination.  So she had enough information to understand why she was being fired and formulate a response to those grounds before she was terminated. *See Riccio*, 907 F.2d at 1465; *Linton*, 964 F.2d at 1440.

Smith was also given adequate opportunity to respond.  She met with her supervisors twice and was questioned about each ground for her termination.  *See* J.A. 52 ("[Her supervisors] asked Plaintiff whether she had a reason to access Alex Murphy's file on Optiview.  Plaintiff responded . . ."); Appellant's Reply Brief at 11 ("[I]t is true that [Smith] was asked if she had accessed a confidential file . . ."); J.A. 54–55 ("Plaintiff was asked [by supervisors] why she didn't meet with [her supervisors] on July 12, 2019, and she replied . . ."); J.A. 55 ("Plaintiff was questioned [by supervisors] about where she kept her computer password; and she replied . . .).  While not required, one of those times she was even represented by counsel.  Smith thus had plenty of opportunity to argue against her termination.  *See Riccio*, 907 F.2d at 1465; *Linton*, 964 F.2d at 1440.

So Defendants satisfied their minimal, pre-termination, burden.  Smith was aware of the conduct she was being investigated for and she knew that investigation could end in her termination.  She was also allowed to explain why she should not be fired.  As a result,

---

[6] A fact she was reminded of when interviewed by the Sheriff's Office later that month.  While Smith argues that certain portions of the Sheriff's report cannot be considered as true, she herself admits the Office asked her questions about disclosing Optiview information without authorization.

she received all the pre-termination procedures she was due. And the district court was right to dismiss her claims to the contrary.

### B. Defendants provided constitutionally adequate post-termination procedures

A tenured public employee who is fired is due a post-termination hearing that is "more comprehensive" than the pre-termination hearing. *Gilbert*, 520 U.S. at 929. To determine whether the employee was due more process than she received, courts balance the private interest at stake and the "probative value, if any" of any demanded additional safeguards against the Government's interest in not providing them. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Smith received extensive post-termination process. She was afforded a two-day hearing before the Board during which she was represented by counsel, could present evidence and witnesses, and could cross-examine adverse witnesses. The Board then issued an appealable, written opinion. That opinion was affirmed by the Town Commissioners.

Smith challenges the sufficiency of these procedures on two grounds: (1) she bore the burden of proof before the Board; and (2) the process was a "sham" because the Board could not reinstate her. Appellant's Reply Brief at 15. In other words, she demands two new safeguards: allocating the burden of proof to the employer and a more powerful Board. *See Mathews*, 424 U.S. at 335. Yet she has not plausibly alleged that she was deprived of either and so her claims fail.

10

### 1.    The burden of proof

Smith asserts that the Board impermissibly forced her to prove by a preponderance of the evidence that she was unjustifiably fired. For support, she points to an email from her former Director of Human Resources telling her as much and to County policies enacted after her hearing affirmatively allocating the burden of proof to the employer. She says that the allegedly misplaced burden of proof violated her due process.

We reject her argument because it is implausible that Smith bore the burden of proof at her Board hearing. The Board found that: (1) Smith should be reprimanded because it found her insubordinate "by a preponderance of the evidence"; (2) Smith should not be fired for violating the County's IT Policy because the record "fails to demonstrate [a violation] by a preponderance of the evidence"; and (3) Smith was justifiably fired because the Board found "by a preponderance of the documentary evidence" that she accessed the Murphy file without a valid reason, lied about it, and thus her Optiview access was "appropriately" revoked. J.A. 37–38.[7] In each finding, the Board required a preponderance of the evidence support the reason for termination. But if Smith bore the burden as she claims, the Board would have required a preponderance of the evidence support her defense instead.[8]

---

[7] We consider the Board's written decision because Smith attached it to her complaint. *See Occupy Columbia*, 738 F.3d at 116.

[8] Take the Board's second finding as an example. Smith prevailed before the Board on this issue. If she bore the burden of proof, the Board would have had to find that the record affirmatively demonstrated that there was no violation of the IT policy. But that's
(Continued)

To be clear, Smith plausibly alleged that Human Resources told her beforehand she had the burden of proof. But that is not the purported due process violation. Smith claims her rights were violated because the Board itself assigned her the burden at her hearing. Yet Smith attached the Board's written decision to her complaint revealing she did not. Even at this early stage, we cannot turn a blind eye to reality—particularly when the plaintiff herself provides it for us. So, based on Smith's own allegations, it is implausible Smith bore the burden of proof at the hearing and, likewise, implausible her due process rights were violated in this way.[9]

### 2.      The Board's power

Smith next argues that her Board hearing offered insufficient post-termination due process because the Board could not reinstate her. Smith needed access to Optiview to do her job. So, as Smith tells it, without access, she could not be reinstated. The Sheriff

---

not what the Board found. Instead, it found that the record failed to establish a violation of the policy. And that means the County, not Smith, bore the burden of proof.

[9] This is not to suggest that had the Board placed the burden of proof on her, it would have violated the Constitution. We have never held due process requires the employer bear the burden of proof when firing an employee. And we are skeptical that it does. *See, e.g.*, *United States v. Santoro*, 866 F.2d 1538, 1544 (4th Cir. 1989) ("Undoubtedly, Congress may alter the burden of proof in a civil proceeding as it sees fit, without constitutional implications."); *Lavine v. Milne*, 424 U.S. 577, 585 (1976) ("Outside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment."); *Rockwell v. Comm'r*, 512 F.2d 882, 887 (9th Cir. 1975) ("Rockwell argues that to impose the burden of persuasion on him is to deny him due process of law. The argument borders on the frivolous."); *James v. City of Houston*, 48 F. App'x 916, 916 & n.10 (5th Cir. 2002) ("[N]ot a single federal court of appeals has held that shifting the burden of proof in such a review proceeding violates the Fourteenth Amendment's Due Process Clause."); *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626-28 (10th Cir. 1996); *Chung v. Park*, 514 F.2d 382, 386–87 (3d Cir. 1975). Yet we need not go so far as to decide that today.

removed her access. And while the Board reviewed that decision, Smith claims the Board could not restore her Optiview access. She thus concludes that her post-termination proceedings were a sham because they could never have ended in her reinstatement even if the Board agreed with her.

To be more specific, Smith does not allege the Board lacked authority to restore Optiview access and reinstate her. She says the Board had the power to do exactly that.[10] Instead, she advances a nuanced theory: while the Board *could* restore her Optiview access and reinstate her, it *believed* it could not. Procedurally this amounts to the same thing. In either case, the proceedings would be, in Smith's view, a sham. She cites two things to support her argument that the Board believed it could not restore her Optiview access: (1) the County represented to the district court, after the Board's judgment, that the Board could not override the Sheriff's Optiview decision; and (2) the Board did not affirmatively indicate that it had the power to restore her access.

These alleged facts cannot nudge Smith's claim that the Board could not have reinstated her if it wanted to over the plausibility threshold. *See Ashcroft*, 556 U.S. at 681. To start, her complaint contains scant support for this "belief" theory. It alleges that "[t]he County now takes the position that it could not consider a lesser penalty because the Sheriff's ostensibly [sic] revocation of Plaintiff's authorization to access the Optiview

---

[10] Smith alleges that only the State's Attorney's Office has the power to revoke her Optiview access. She also acknowledges that the Board has authority over the State's Attorney's Office. Smith makes similar claims in her brief on appeal.

13

database cannot be overridden."[11] J.A. 61. But this was added to the complaint in response to the County's motion to dismiss Smith's original complaint. So it is her interpretation of the County's post-hoc litigating position. And that position tells us next to nothing about how the Board viewed its role when deciding.[12] *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908–09 (2020) (explaining why courts generally disregard justifications for agency action presented during post-hoc litigation). This allegation thus does not make Smith's claim plausible, particularly since the Board gave one huge indication that it thought it could restore her Optiview access: it reviewed the merits of the Sheriff's revocation decision. J.A. 38 (Board determining "by a preponderance of the evidence" that the revocation was "appropriate").

True, the Board did not expressly state it could reverse the Sheriff's decision. Indeed, it did not say it could reverse any decision it reviewed. Yet we simply cannot infer from the Board's silence that it thought its proceedings were purposeless. Doing so would defy both common sense and the facts before us. *Cf. Koon*, 50 F.4th at 409 (explaining that we can only draw inferences that are "reasonably probable given the facts"). Smith has thus not plausibly alleged that the Board could not reinstate her. So her argument that she was due a more powerful board fails.

---

[11] The complaint also alleges that the Board's review failed "to provide any opportunity for full remedial relief of reinstatement." J.A. 71. This cryptic statement does not support Smith's "belief" theory.

[12] We also question whether Smith is accurately characterizing the County's position in the district court. *See* Def.'s Mot. to Dismiss, ECF No. 19, at 25–26 (April 22, 2021). And we note the County does not represent on appeal that the Board could not have reversed the Sheriff.

14

\*          \*          \*

Public employees with a property interest in their jobs cannot be fired without some process. Yet the process due is not unlimited. Smith was given notice of the charges against her and an opportunity to respond to them before she was fired. She could then appeal her termination to a review board where she was represented by counsel, could present evidence and witnesses, and could cross-examine the witnesses against her. She did not carry the burden of proof during that appeal. She also has not plausibly alleged that the Board could not reinstate her. Here, due process requires nothing more. The district court is

*AFFIRMED.*